# ReedSmith

Murray J. Klein
Direct Phone: 609.520.6022
Email: mklein@reedsmith.com

Reed Smith LLP
Princeton Forrestal Village
136 Main Street - Suite 250
Princeton, NJ 08540-7839
609.987.0050
Fax 609.951.0824

August 19, 2005

**VIA OVERNIGHT MAIL**

Mr. Steve Kirsh, Director
Department of Health & Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

      Re: **Request for Expedited Judicial Review
          Ohio 93-99 HCAP Sub-Group
          PRRB Case No. 02-1813G
          Fiscal Intermediary: Riverbend Government Benefits Admistrator**

Dear Mr. Kirsh:

The law firm of Reed Smith LLP is the Providers' group representative in the above-referenced group appeal.[1] By way of this letter brief, we hereby request that the Provider Reimbursement Review Board (the "Board") grant expedited judicial review ("EJR") to the Providers.

**I.    INTRODUCTION**

The Providers are Medicare and Medicaid certified acute care hospitals in the State of Ohio, who have requested hearings either individually or as part of a group before the Board for the fiscal years 1992 through 2001. All of those appeals, either by virtue of direct appeal or the add/transfer process, are now part of the present appeal.

---

[1] An itemized list of the providers in this appeal, the cost report periods at issue, and the amount of reimbursement sought is attached hereto as Exhibit "A."

LONDON ♦ NEW YORK ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND
MUNICH ♦ PRINCETON ♦ FALLS CHURCH ♦ WILMINGTON ♦ NEWARK ♦ MIDLANDS, U.K. ♦ CENTURY CITY ♦ RICHMOND ♦ LEESBURG
reedsmith.com
Steven J. Picco ♦ Office Administrative Partner ♦ A Limited Liability Partnership formed in the State of Delaware

PRCLIB-353352.7-RLDICLEM 8/19/05 12:20 PM

The appeal challenges the Intermediary's failure to include Ohio Hospital Care Assurance Program ("HCAP") days in the Medicaid Proxy of the Providers' Medicare Disproportionate Share ("DSH") calculation. HCAP is part of the Ohio State Plan approved by the Secretary of Health and Human Services under Title XIX, and the Intermediary's failure to include HCAP days in the DSH calculation is a direct violation of the statutory DSH provision found at 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). There exists no factual disagreements between the parties, and the only issue in the appeal involves a statutory dispute relating to the interpretation of the statutory DSH provision.

Importantly, the Providers' challenge also calls directly into question the validity of the DSH regulation found at 42 C.F.R. § 412.106(b)(4), Ruling 97-2, and Program Memorandum A-99-62 (the "Program Memorandum" or "PM 99-62") as applied to HCAP. As explained in detail below, all three of these authorities provide that the only patient days includable in the Medicaid Proxy of the DSH calculation are those days in which the patient was eligible for Medicaid. Because beneficiaries of HCAP are not eligible for Medicaid, the Board, before finding in favor of the Providers, must first determine that all three of these authorities, at least with respect to HCAP, are invalid. The Board, which is prohibited from resolving issues which implicate the validity of a governing law, regulation or CMS ruling, is unauthorized to make this determination. The Board, therefore, should grant the Providers' petition for EJR.

II. **THE BOARD SHOULD GRANT EJR TO ALL PROVIDERS AND FISCAL YEARS NOT SUBJECT TO THE INTERMEDIARY'S JURISDICTIONAL CHALLENGE**

In its jurisdictional comments to the Board, the Intermediary challenged the Board's jurisdiction with respect to specific Providers and specific fiscal years.[2] The Providers responded to the

---

[2] A schedule of Providers and fiscal years subject to the Intermediary's challenge is attached hereto as Exhibit "B."

Mr. Steve Kirsh, Director
August 19, 2005
Page 3

**ReedSmith**

Intermediary's jurisdictional comments by correspondence dated November 26, 2003.[3] The Providers contend that the Intermediary's jurisdictional comments should be rejected for the reasons explained at length in their November 26th correspondence. If the Board requires any further information from the Providers regarding the jurisdictional challenge, please contact the undersigned.

While the Board is in the process of resolving the Intermediary's challenge, the Board, based upon the arguments below, should simultaneously grant EJR to all those Providers and fiscal years for which there is no jurisdictional dispute.[4] If the board rules in favor of the remaining Providers on the jurisdictional issues raised by the Intermediary, the Board has the authority to grant EJR to those Providers for the fiscal years in question.[5]

### III. THE BOARD IS WITHOUT AUTHORITY TO DECIDE THE QUESTION OF WHETHER THE DSH REGULATION, RULING 97-2 AND PM 99-62 ARE INVALID AS APPLIED TO HCAP

Once the Board finds that it has jurisdiction, it must grant EJR if the appeal involves the validity of a governing law, regulation or CMS ruling.[6] Here, the Providers' appeal involves one question of law: whether the federal DSH statute includes all patients who qualify for "medical assistance" under a State Plan approved under Title XIX. If the Board answers this question in the affirmative, HCAP days must be included in the DSH calculation because HCAP is a part of Ohio's approved State Plan under

---

[3] A copy of the Providers' submission is attached hereto as Exhibit "C."

[4] A schedule of Providers and fiscal years not subject to the Intermediary's jurisdictional challenge is attached hereto as Exhibit "D."

[5] See the Board's EJR decisions in the TennCare Sub-Group Appeal, PRRB Case No. 03-1162G, attached hereto as Exhibit E. In the Tennessee group appeal, which is discussed in more detail in Section IV of this submission, the Board, while granting EJR to the majority of providers and fiscal years, excluded certain providers and fiscal years from the EJR determination. The Board subsequently granted EJR to those excluded providers and fiscal years after resolving the jurisdictional issues. See Exhibit "E."

[6] 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842; PRM-I § 2920.3; and Board Instructions Part I.E.

Mr. Steve Kirsh, Director
August 19, 2005
Page 4

**ReedSmith**

Title XIX. In order to resolve this issue, the Board must decide whether the DSH regulation, Ruling 97-2 and PM 99-62, all of which provide that only Medicaid days are to be included in the Medicaid Proxy of the DSH calculation, are valid as applied to HCAP. The Board has no authority to adjudge the validity of these authorities.

### A.   The Medicare DSH Calculation

Pursuant to the Comprehensive Omnibus Reconciliation Act of 1985 ("COBRA"), Congress created an adjustment to rates determined under the Prospective Payment System ("PPS") for hospitals serving a "significantly disproportionate number of low income patients."[7] The DSH adjustment evidences a Congressional mandate to reimburse hospitals for the increased costs that may be incurred through the treatment of low-income patients and to ensure the continued operation of these facilities.[8]

In order to qualify for a DSH adjustment, the hospital must meet a certain "disproportionate share percentage," which is defined as the sum of two fractions designed to act as proxies reflecting the number of low-income patients served. The first fraction, the Medicare Proxy, is not at issue in this case. The second fraction, the Medicaid Proxy, encompasses all patients who are not entitled to Medicare benefits, but who are eligible to receive medical assistance through a State Plan approved under Title XIX. Pursuant to the statutory DSH provision, the numerator of the Medicaid Proxy must include all "patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State Plan approved under [Title XIX], but who were not entitled to

---

[7] 42 U.S.C. §1395ww(d)(5)(F).
[8] See Jewish Hosp., Inc. v. Secretary of Health & Human Services, 19 F.3d 270, 275 (6th Cir. 1994).

[Medicare Part A benefits]."9 The denominator of the Medicaid Proxy is calculated by the total number of hospital patient days for the specified period.10

### B. The DSH Regulation, Ruling 97-2 and PM 99-62

The regulation that the Secretary promulgated to implement the Medicaid Proxy is found at 42 C.F.R. § 412.106(b)(4). The DSH regulation instructs that only those patients eligible for Medicaid are to be included in the Medicaid Proxy: ["When calculating the Medicaid Proxy,] the fiscal intermediary determines . . . the number of the hospital's patients days of service for which patients were eligible for Medicaid but not entitled to Medicare Part A, and divides that number by the total number of patient days in the same period."11

On February 27, 1997, the Health Care Financing Authority, now known as CMS (hereinafter referred to as "CMS"), issued Ruling 97-2 in an effort to prospectively change its interpretation of the statutory DSH provision and the DSH regulation.12 Ruling 97-2 also provides that only those patients eligible for Medicaid are counted in the Medicaid Proxy: "In order to ensure national uniformity in calculation of DSH adjustments, [CMS] has determined that . . . [it] will count in the Medicaid Proxy the number of days of inpatient hospital services for patients eligible for Medicaid on that day, whether or not the hospital received payment for those inpatient hospital services."13

---

9 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).
10 Id.
11 42 C.F.R. § 412.106(b)(4).
12 A copy of Ruling 97-2 is attached hereto as Exhibit "F."
13 See Exhibit "F" at page 3.

Thereafter, on December 1, 1999, CMS issued PM 99-62 to clarify "the definition of eligible Medicaid days in the Medicare disproportionate share policy" for cost reporting periods beginning on or after January 1, 2000.[14] In the Program Memorandum, CMS again mandated that in order for a day to be counted in the numerator of the Medicaid Proxy, "the patient must be eligible on that day for medical assistance benefits under . . . Medicaid . . . ."[15] According to the Program Memorandum, all other patient days utilized by beneficiaries who were not eligible for Medicaid were to be excluded from the DSH calculation.[16]

### C.    Ohio's HCAP Program

HCAP was created in an effort to provide "basic, medically necessary" patient care to those Ohio residents who meet certain low-income requirements.[17] It was designed to reach those individuals whose income is at or below the federal poverty line and who were not recipients of Medicaid.[18] The Program establishes a procedure for which hospitals will be reimbursed for serving a disproportionately high number of low-income individuals.[19] HCAP is funded on both the Federal and State level.[20] For all years at issue, HCAP was included under the Ohio State Plan and approved under Title XIX.[21] These facts are not in dispute.

---

[14] A copy of PM 99-62 is attached hereto as Exhibit "G."
[15] Id. at page 2.
[16] Id. at pages 2&3.
[17] O.R.C. § 5112.17.
[18] Id.
[19] O.R.C. §5112.08 et seq.
[20] O.R.C. § 5112.18.
[21] O.R.C. § 5112 et. seq.

Mr. Steve Kirsh, Director  
August 19, 2005  
Page 7

ReedSmith

### D. The Providers' Appeal Involves the Validity of the DSH Regulation, Ruling 97-2 and PM 99-62

The only issue in this appeal is whether HCAP days should be included in the Medicaid Proxy of the Medicare DSH calculation because those days relate to patients eligible for medical assistance under a State Plan approved under Title XIX. While HCAP is part of the Ohio State Plan approved under Title XIX, beneficiaries of the program are not eligible for Medicaid. Thus, the inclusion of HCAP days in the Medicaid Proxy of the DSH calculation is incompatible with the provisions of the DSH regulation, Ruling 97-2 and PM 99-62. In fact, the Intermediary, in its final position paper, argues that all three of these authorities preclude the Providers from prevailing in this appeal.[22] In order to obtain a favorable ruling from the Board, therefore, the Provider must demonstrate that these three authorities are invalid as applied to HCAP because their application results in the exclusion, from the Medicaid Proxy, of "days . . . which consist of patients who . . . were eligible for medical assistance under a State Plan approved under [Title XIX], but who were not entitled to benefits under [Medicare Part A]."[23]

The Board, in a recent decision in <u>Ashtabula County Medical Center, et al. v. Blue Cross Blue Shield Association</u> ("<u>Ashtabula</u>"),[24] has already concluded "that the federal DSH statute does not limit the patients covered to Medicaid patients only, but that it includes patients who qualify for 'medical assistance' under Ohio's HCAP State Plan that is approved under Title XIX."[25] The Board found that

---

[22] See the Intermediary's final position paper at pages 4-5.  
[23] 42 U.S.C. § 1395ww(d)(5)(vi)(I).  
[24] A copy of the decision is attached as Exhibit "H."  
[25] See Exhibit "H" at page 4.

Mr. Steve Kirsh, Director  
August 19, 2005  
Page 8

ReedSmith

"HCAP patient days should . . . be included in the calculation of the Medicaid proxy to determine the Providers' DSH adjustments."[26]

In reaching this decision, the Board discussed the Intermediary's argument that "the enabling DSH statute and its implementing regulation at 42 C.F.R. § 412.106(b)(4) use different terms but, when read collectively, clearly mean that Medicaid eligibility is required to be included in the Medicaid Proxy." The Board disagreed concluding that "the Federal statute [is] the controlling authority in this case and, as discussed earlier, that authority does not contain the limitation on medical assistance that the Intermediary proposes." Although the Board in Ashtabula never expressly found the implementing regulation invalid or even discussed 97-2 or PM 99-62, the Board's decision implicitly calls into question the validity of all three authorities as applied to HCAP.

The Providers in the instant matter contend that Board has no authority to pass judgment on the validity of the DSH regulation, Ruling 97-2 or PM 99-62. Therefore, the Providers request that the Board grant EJR.

### IV. THE BOARD PREVIOUSLY GRANTED EJR IN TWO APPEALS INVOLVING SIMILAR ISSUES

The Oregon Group Appeal, PRRB Case No. 00-3891G and the Tennessee Group Appeal, PRRB Case No. 03-1162G, involved challenges to the validity of a CMS policy that excluded all Section 1115 waiver days from the DSH calculation for patient discharges prior to January 20, 2000. When the Section 1115 waiver provision was enacted, Congress mandated that these programs be regarded as part of a State Plan of medical assistance approved under Title XIX.[27] In both the Oregon and Tennessee appeals, the Providers argued that the Board was without authority to decide the question of whether the

---

26 Id.  
27 Social Security Act § 1115(a)(2)(A).

Medicare regulation governing reimbursement, which excluded Section 1115 waiver days from the DSH calculation, was valid. The Board, agreeing with the Providers' position, granted the Providers' request for EJR in each of these appeals.

Here, the Providers appeal arises from the intermediary's exclusion of HCAP days from the Providers' DSH calculation. HCAP days, like Section 1115 waiver days, are days consisting of patients who were eligible for medical assistance under a State Plan of Medical Assistance approved under Title XIX. Also, the present appeal involves a federal regulation (as well as a CMS ruling and CMS program memorandum), which, at least with respect to HCAP, are in direct conflict with the express language and intent of the Medicare statute because they prohibit the inclusion of all days, other than Medicaid days, from the numerator of the Medicaid Proxy. Accordingly, under the same reasoning applied in the Oregon and Tennessee appeals, the Board should grant EJR in the instant matter.

## V.   CONCLUSION

Based on the foregoing, the Providers request that the Board grant their petition for EJR.

Very truly yours,

Murray J. Klein

MJK:es
Enclosures
c.   Suzanne Cochran, Chairperson (w/enc. via overnight mail)
     Cathy Huzvar – AdminaStar Federal, Inc. (w/enc. via overnight mail)
     Raymond Pietrucha, Blue Cross Blue Shield Association (w/enc. via overnight mail)