## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

_____
)
ADENA REGIONAL MEDICAL CENTER, et al.    )
                                         )
      Plaintiffs                       )
                                         )
      v.                               )  Case No.: 1:05-cv-02422 (RWR)
                                         )
MICHAEL O. LEAVITT,                      )
Secretary, United States Department of   )
Health And Human Services                )
                                         )
      Defendant                        )
_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

**Table of Contents**

Preliminary Statement.............................................................................................................1

Statement of Facts and Procedural History............................................................................2

I.      Statutory and Regulatory Background.........................................................................2

        A.      General Medicare Overview ..............................................................................2

        B.      The Medicare DSH Adjustment.........................................................................3

        C.      The Procedure For Obtaining Medicare Reimbursement And For Appealing
                A Final Reimbursement Determination .............................................................4

        D.      State Plans Of Medical Assistance Under Title XIX.........................................5

        E.      HCAP Is Part Of The Ohio State Plan ..............................................................5

II.     The Intermediary Excluded HCAP Days From The Hospitals' DSH Calculations ...........8

Argument ..............................................................................................................................10

I.      Standard of Review......................................................................................................10

II.     Because HCAP Is Part Of Ohio's State Plan Approved Under Title XIX, HCAP
        Days Must Be Included In The DSH Calculation.....................................................11

Conclusion ...........................................................................................................................15

## Table of Authorities

*Case*                                                                          *Page*

Alhambra v. Thompson, 259 F.3d 1071 (9th Cir. 2001) ................................................... 14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................... 10

Cabell Huntington Hosp., Inc. v. Shalala, 101 F.3s 984 (4th Cir. 1996) .......................... 14

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .................................................................. 10

Clark Reg'l. Med. Ctr. v. Shalala, 136 F. Supp. 2d 667 (E.D. Ky. 2001) ......................... 14

Deaconess Health Serv. Corp. v. Shalala, 83 F.3d 1041 (8th Cir. 1996) .......................... 15

Diamond v. Atwood, 43 F.3d 1538 (D.C. Cir. 1995) ........................................................ 10

Greene v. Dalton, 164 F.3d 671 (D.C. Cir. 1999) ............................................................. 10

Harding v. Gray, 9 F.3d 150 (D.C. Cir. 1993) .................................................................. 10

Health Ins. Ass'n. of Am., Inc. v. Shalala, 23 F.3d 412 (D.C. Cir. 1994) .......................... 2

Jewish Hosp., Inc. v. Sec'y of Health & Human Serv., 19 F.3d 270 (6th Cir. 1994) ... 3, 14

Legacy Emanuel Hosp. & Health Ctr. v. Shalala, 97 F.3d 1261 (9th Cir. 1996) ............. 15

Monmouth Med. Ctr. v. Thompson, 257 F.3d 807 (D.C. Cir. 2001) ........................... 14-15

Odessa Reg'l. Hosp. v. Leavitt, 386 F. Supp. 2d 885 (W.D. Tex. 2005) .......................... 14

Portland Adventist Med. Ctr. v. Thompson, 399 F.3d 1091 (9th Cir. 2005) .................... 15

Pottgieser v. Kizer, 906 F.2d 1319 (9th Cir. 1990) ............................................................. 5

United States v. Blue Cross & Blue Shield of Mich., 726 F. Supp. 1517 (E.D. Mich.
    1999) ............................................................................................................................ 2

*Statutes, Rules, and Regulations*

Fed R. Civ. P. 56(c) ........................................................................................................... 10

42 U.S.C. §§ 1395c, 1395d .................................................................................................. 2
        § 1395f(b) ................................................................................................................... 2
        § 1395h ....................................................................................................................... 4
        §§ 1395h, 1395u ......................................................................................................... 4
        § 1395oo(a) ................................................................................................................. 4

§ 1395oo(f)(1) ........................................................................................4
§ 1395oo(f)(2) ........................................................................................9
§ 1395ww(d) ..........................................................................................2
§ 1395ww(d)(1) – (d)(4) .........................................................................2
§ 1395ww(d)(5)(F) .................................................................................3
§ 1395ww(d)(5)(F)(i)(I) ..........................................................................3
§ 1395ww(d)(5)(F)(v) .............................................................................3
§ 1395ww(d)(5)(F)(vi)(I) .........................................................................3
§ 1395ww(d)(5)(F)(vi)(II) ...........................................................1, 3, 11, 15
§ 1396 ...................................................................................................5
§ 1396a .................................................................................................5
§§ 1396a(a)(10)(A) et seq., 1396a(a)(1) ...............................................5
§ 1396d .................................................................................................5


42 C.F.R. § 405.1803 .................................................................................4
§ 405.1841 et. seq. ...............................................................................1
§ 405.1842(d)(2)(ii) .............................................................................10
§ 413.24(f) ............................................................................................4
Part 412 ................................................................................................2


*Other Authorities Cited*

Ashtabula County Med. Ctr. v. BlueCross BlueShield Assoc., decision 2005-D49
     (August 10, 2005) ........................................................................6, 13

iv

## PRELIMINARY STATEMENT

The dispute arises from the government's failure to correctly reimburse the plaintiff hospitals (the "Hospitals") for certain Medicare payments. Specifically, the Secretary of Health and Human Services (the "Secretary") incorrectly calculated the Hospitals' Medicare disproportionate share hospital ("DSH") adjustment.

The DSH adjustment is an additional payment made to those hospitals that serve a disproportionate share of indigent patients. The formula used to calculate the DSH adjustment is set forth with clarity in the Medicare statute. See 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The DSH adjustment compensates hospitals for the increased costs and financial pressures associated with treating the indigent and the medically underserved. The size of a hospital's DSH adjustment — and whether the hospital receives an adjustment at all — is based on the number of days that a Hospital provides inpatient services to patients eligible for medical assistance under a State Plan of medical assistance approved under Title XIX of the Social Security Act.

Ohio's Hospital Care Assurance Program ("HCAP") is part of Ohio's State Plan approved under Title XIX. For the years at issue in their Complaint, the Hospitals sought to have HCAP days included in their respective DSH calculations. Notwithstanding the fact that HCAP is part of Ohio's State Plan, the Secretary's agents (Medicare fiscal intermediaries) excluded all HCAP patient days from the calculation of DSH.

Each of the Hospitals has perfected its right to appeal the foregoing issue under the Medicare administrative appeals process set forth at 42 C.F.R. § 405.1841 et seq. The Hospitals seek summary judgment on the ground that the Medicare statute requires the inclusion of HCAP days in the DSH calculation. The Secretary should be ordered to

recalculate the DSH percentage in accordance with the Medicare statute and make additional payments to the Hospitals consistent with the revised calculation.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**I.    STATUTORY AND REGULATORY BACKGROUND**

    **A.    General Medicare Overview**

Congress enacted the Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. § 1395ww(d), in 1965.  As originally enacted, Medicare was a public health insurance program that furnished health benefits to participating individuals once they reached the age of 65.  United States v. Blue Cross and Blue Shield of Mich., 726 F. Supp. 1517, 1519 (E.D. Mich. 1999).  Over the years, it has been expanded to provide health benefits to qualifying disabled persons and to individuals suffering from end-stage renal disease.  Health Ins. Ass'n of America, Inc. v. Shalala, 23 F.3d 412, 414 (D.C. Cir. 1994).  This matter arises under Part A of the Medicare program, which authorizes payments for, among other things, certain inpatient hospital services and related post-hospital services.  See 42 U.S.C. §§ 1395c, 1395d.

For cost reporting years beginning October 1, 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis.  Id. § 1395f(b).  Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the prospective payment system ("PPS") to reimburse most hospitals for inpatient operating costs.  Id. § 1395ww(d).  Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups, subject to certain payment adjustments.  Id. § 1395ww(d)(1)-(d)(4); 42 C.F.R. Part 412.

**B.**    **The Medicare DSH Adjustment**

In 1986, Congress enacted the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub. L. No. 99-272, § 9105, 100 Stat. 82 (1986). COBRA included a provision that both created and defined the DSH adjustment. 42 U.S.C. § 1395ww(d)(5)(F). The DSH adjustment requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients… ." Id. § 1395ww(d)(5)(F)(i)(I). Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depends upon the hospital's DSH percentage. See id. § 1395ww(d)(5)(F)(v). The DSH percentage is "defined as the sum of two fractions expressed as percentages and serves as a 'proxy' for all low income patients." Jewish Hospital, Inc. v. Secretary of Health and Human Servs., 19 F.3d 270, 272 (6th Cir. 1994). The purpose of the first fraction, known as the Medicare fraction, is to account for low-income Medicare patients and is based on the number of Medicare patients who qualify for Supplemental Security Income. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The present matter does not deal with the Medicare fraction.

The second fraction, known as the Medicaid fraction, accounts for the number of non-Medicare low-income patients served by a hospital, relative to the hospital's entire patient population. Id. That fraction is defined as the number of days for which patients were eligible for medical benefits under a State Plan of medical assistance under Title XIX, divided by the total number of patient days for a hospital. Id. § 1395ww(d)(5)(F)(vi)(II). It is the Medicaid fraction which is at issue in this dispute.

C.    **The Procedure for Obtaining Medicare Reimbursement and for Appealing a Final Reimbursement Determination**

The Secretary has delegated much of the responsibility for administering the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS") formerly known as the Health Care Financing Administration (hereinafter collectively referred to as "CMS").  <u>See</u> 42 U.S.C. §§ 1395h, 1395u.  The Secretary, through CMS, delegated many of Medicare's audit and payment functions to organizations known as fiscal intermediaries.  <u>Id.</u> § 1395h.

At the close of a fiscal year, a provider of services must submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare.  42 C.F.R. § 413.24(f).  The intermediary is required to analyze and audit the cost report and inform the provider of a final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR").  <u>Id.</u> § 405.1803.  A provider dissatisfied with its intermediary's determination may file an administrative appeal with the Provider Reimbursement Review Board ("PRRB") within 180 days of the date of the NPR.  42 U.S.C. § 1395oo(a).

A provider that has filed an appeal with the PRRB may ask the PRRB to determine that it lacks the authority to decide "a question of law or regulations relevant to the matters in controversy."  <u>Id.</u> § 1395oo(f)(1).  Such a request is generally known as a request for Expedited Judicial Review ("EJR").  If the PRRB determines that it lacks authority to decide the issue raised by the provider in its EJR petition, a provider may obtain judicial review of that issue by filing a lawsuit within sixty (60) days of receipt of the PRRB's EJR determination.  <u>Id.</u>

**D.    State Plans of Medical Assistance Under Title XIX**

The Medicaid program, set forth in Title XIX of the Social Security Act, is a cooperative federal-state program that furnishes health care to persons who meet specified eligibility requirements, including low-income status.  See id. § 1396; Pottgieser v. Kizer, 906 F.2d 1319, 1321 (9th Cir. 1990).  States participating in the program have a substantial amount of discretion in selecting the benefits provided under their Medicaid programs.  42 U.S.C. § 1396d.  Nevertheless, all states must furnish certain benefits under their Medicaid program, including coverage for inpatient hospital services.  Id. §§ 1396a(a)(10)(A) et seq., 1396a(a)(1).

States that participate in the Medicaid program are required to develop a State Plan for the delivery of medical assistance, and to submit that State Plan to the Secretary for approval.  Id. § 1396.  The Plan must comply with certain requirements of Title XIX set forth at 42 U.S.C. § 1396a.

**E.    HCAP Is Part Of The Ohio State Plan**

HCAP provides medical assistance to low-income Ohio patients.[1]  Under HCAP, Ohio hospitals are required to provide patient care to Ohio residents meeting certain low-income requirements.[2]  HCAP provides a mechanism to pay for care to HCAP patients by compensating hospitals for the costs of providing such care.[3]  HCAP, like traditional Medicaid, is funded in part with federal matching funds known as Federal Financial

_____

[1] See a copy of the relevant State Plan provisions attached hereto as Exhibit A.

[2] See id.

[3] See id.

Participation ("FFP").[4]

The Ohio State Plan, approved under Title XIX, includes HCAP.[5]  CMS's Title

XIX "Notice of Approval" identifies the following plan provisions as the "Hospital Care

Assurance Program (HCAP)":

> Provision of basic, medically necessary hospital-level services.
>
> Under the provisions of section 5112.17 of the Revised Code, each hospital that receives payment under the provisions of Chapter 5112. of the Revised Code, shall provide, without charge to the individual, basic, medically necessary hospital-level services to the individual who is a resident of this state, is not a recipient of the medicaid program and whose income is at or below the federal poverty line. Residence is established by a person who is living in Ohio voluntarily and who is not receiving public assistance in another state. Current recipients of the disability assistance program as defined in Chapter 5115. of the Revised Code, qualify for services under the provisions of this rule.
>
> (A) Definitions.
>
> (1) "Basic, medically necessary hospital level services" are defined as all inpatient and outpatient services covered under the medicaid program in Chapter 5101:3-2 of the Administrative Code with the exception of transplantation services and services associated with transplantation. These covered services must be ordered by an Ohio licensed physician and delivered at a hospital where the physician has clinical privileges and where such services are permissible to be provided by the hospital under its certificate of authority granted under Chapters 3711., 3727., and/or 5119. of the Revised Code. Hospitals will be responsible for providing

_____

[4] See Ashtabula County Medical Center v. BlueCross BlueShield Association, decision 2005-D49 (August 10, 2005) attached as Exhibit B; see also Ashtabula County Medical Center, CMS Administrator Decision, October 12, 2005, attached as Exhibit C, at 12.

[5] See Exhibit A.

basic, medically necessary hospital-level services to those persons described in paragraph (B) of this rule.

(2) "Third-party payer" means any private or public entity or program that may be liable by law or contract to make payment to or on behalf of an individual for health care services. Third-party payer does not include a hospital.

(B) Determination of eligibility.

A person is eligible for basic, medically necessary hospital-level services under the provisions of this rule if the person is a current recipient of the disability assistance (DA) program or the person's individual or family income is at or below the current poverty guideline issued by the secretary pursuant to 42 U.S.C. 9902 that applies to the individual or family when calculated by either of the methods described in paragraphs (B)(2)(a) and (B)(2)(b) of this rule on the date these services were provided.

(1) For purposes of this rule, a "family" shall include the patient, the patient's spouse, and all of the patient's children, natural or adoptive, under the age of eighteen who live in the home. If the patient is under the age of eighteen, the "family" shall include the patient, the patient's natural or adoptive parent(s), and the parent(s)' children, natural or adoptive under the age of eighteen who live in the home. If the patient is the child of a minor parent who still resides in the home of the patient's grandparents, the "family" shall include only the parent(s) and any of the parent(s)' children, natural or adoptive who reside in the home.

(2) "Income" shall be defined as total salaries, wages, and cash receipts before taxes; receipts that reflect reasonable deductions for business expenses shall be counted for both farm and non-farm self-employment. Income will be calculated by:

(a) Multiplying by four the person's or family's income, as applicable, for the three months preceding the date hospital services were provided;

(b) Using the person's or family's income, as applicable, for the twelve months preceding the date hospital services were provided.

> (3) For outpatient hospital services, a hospital may consider an eligibility determination to be effective for ninety days from the initial service date, during which a new eligibility determination need not be completed. Eligibility for inpatient hospital services must be determined separately for each admission, unless the patient is readmitted within forty-five days of discharge for the same underlying condition. Eligibility for recipients of the disability assistance program must be verified on a monthly basis.[6]

As a factual matter, based on the foregoing, it is beyond dispute that the HCAP program is part of Ohio's State Plan of Medical Assistance approved under Title XIX.

## II.    THE INTERMEDIARY EXCLUDED HCAP DAYS FROM THE HOSPITALS' DSH CALCULATIONS

The Hospitals consist of twenty-five not-for-profit acute care facilities that participate in the Medicare and Medicaid programs.  In computing the Hospitals' Medicare DSH percentages for the cost report years at issue in this litigation, the Secretary, through his fiscal intermediary, excluded HCAP days from the Medicaid fraction.[7]  An itemization of the cost report years at issue in this litigation are attached as Exhibit "A" to the Hospitals' Complaint.

With respect to all such cost report years, the Hospitals filed timely appeals with the PRRB.[8]  In those appeals, the Hospitals challenged CMS' policy under which each hospital's DSH adjustment was calculated using a formula that excluded HCAP days

_____

[6] See Exhibit A.

[7] See Exhibit B attached hereto.

[8] The PRRB determined that all of the Plaintiff Hospitals' appeals were timely filed, without jurisdictional impediments, when it granted EJR.  See a copy of the EJR determination attached as Exhibits C to the Hospitals' Complaint.

from the Medicaid Fraction of the DSH calculation.[9]  The Hospitals sought to have all of

the excluded HCAP days included in their DSH adjustments as patient days for which

patients were eligible for medical assistance under a State Plan approved under Title

XIX.[10]

By correspondence dated August 19, 2005, the Hospitals filed a request for EJR

with the PRRB.[11]  The PRRB granted the Hospitals' request for EJR on December 7,

2005.[12]  Within sixty days of the Hospitals' receipt of the PRRB's EJR determination, the

Hospitals filed a civil action (the present matter) against the Secretary requesting, among

other things, (1) a declaration by the court that the Medicare statute requires the inclusion

of HCAP days in the Medicaid Fraction of the DSH calculation; (2) an order requiring

the Secretary to instruct his Intermediary in Ohio to pay the Hospitals the additional

Medicare DSH funds resulting from the inclusion of such days along with interest

pursuant to 42 U.S.C. § 1395oo(f)(2); and (3) a declaration that the Court shall retain

jurisdiction in this matter until the Secretary's recalculation of the Hospitals' Medicare

DSH percentages and subsequent payment to the Hospitals is complete.[13]

_____

[9] See Exhibit B at page 3.

[10] Id.

[11] See the August 19, 2005 correspondence attached as Exhibit B to the Hospitals'
Complaint.

[12] See the PRRB's December 7, 2005 correspondence attached as Exhibit C to the
Hospitals' Complaint.

[13] See the Hospitals' Complaint.

# ARGUMENT

## I.    STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  A party opposing summary judgment may not rely solely on allegations or conclusory statements.  Greene v. Dalton, 164 F.3d 671, 674 (D.C. Cir. 1999); Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993).  Rather, the opposing party must come forward with specific facts that would enable a reasonable fact finder to find in its favor.  Greene, 164 F.3d at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  This is the only way to defeat summary judgment.

In the instant matter, the PRRB, by granting EJR to the Hospitals, has conclusively determined that there are no factual issues in dispute, and that this matter can be resolved as a matter of law.  42 C.F.R. § 405.1842(d)(2)(ii).  It is undisputed that the Secretary excluded HCAP days from the Medicaid fraction of the Hospitals' DSH calculation.  It is also beyond dispute that the HCAP program is part of Ohio's State Plan of medical assistance approved under Title XIX and that the State of Ohio receives federal matching payments for the HCAP program.  Pursuant to the Medicare statute, all such days must be included in the Medicaid fraction of the DSH calculation.  The

10

Secretary's refusal to include these days contravenes the letter of the statute.  The

Hospitals are therefore entitled to judgment as a matter of law.

II.    **BECAUSE HCAP IS PART OF OHIO'S STATE PLAN APPROVED UNDER TITLE XIX, HCAP DAYS MUST BE INCLUDED IN THE DSH CALCULATION.**

The language of the Medicare DSH statute is explicit and clear.  Under the statute,

the DSH calculation includes all "patient days for such period which consist of patients

who (for such days) were eligible for medical assistance under a State Plan approved

under [Title XIX], but who were not entitled to [Medicare Part A benefits]… ."  42

U.S.C. § 1395ww(d)(5)(F)(vi)(II).

Because the State Plan is a physical document that can be readily examined to see

which kinds of medical assistance are contained within its pages and which are not, the

Medicare DSH statute is easy to apply.  One need only read the State Plan.  In the present

matter, the HCAP provisions are set forth in black and white.  The Secretary has provided

written authorization to include the HCAP program in Ohio's State Plan approved under

Title XIX since 1992.[14]   HCAP has been part of the Ohio State Plan approved under

Title XIX since that date and covers all of the time periods at issue in the Hospitals'

Complaint.[15]

The Ohio State Plan, with HCAP as its instrument, requires Ohio hospitals to

provide, without charge to the individual, "medically necessary hospital level services"

for those state residents whose income is at or below the federal poverty line and who are

_____

[14] See Exhibit A.

[15] See id.

not otherwise concurrently receiving coverage under any other part of the State Plan.[16]

The Ohio State Plan further provides a detailed methodology for determining who is a "resident" for purposes of HCAP and which kinds of medical services are covered by the HCAP program.[17]  Certain services are excluded by the Ohio State Plan, such as transplantation and services associated with transplantation.[18]  Additionally, the Ohio State Plan requires that HCAP services be ordered by an Ohio licensed physician and be delivered at a hospital where the physician has clinical privileges and where such services are permissible to be provided by the hospital under its certificate of authority.[19]

The Ohio State Plan also sets forth the eligibility requirements for HCAP.  A person is eligible for basic, medically necessary hospital-level services under HCAP if the person is a current recipient of Ohio's disability assistance program or the person's individual or family income is at or below the current poverty guideline issued by the Secretary pursuant to 42 U.S.C. § 9902.[20]  For purposes of HCAP eligibility, the State Plan defines "family" to include "the patient, the patient's spouse, and all of the patient's children, natural or adoptive, under the age of eighteen who live in the home."[21]

"Income" is defined by the State Plan, in order to determine HCAP eligibility, as

> [T]otal salaries, wages, and cash receipts before taxes; receipts
> that reflect reasonable deductions for business expenses shall be

_____

[16] See id. at (A)(1).

[17] See Exhibit A.

[18] See id. at (A)(1).

[19] See Id.

[20] See Exhibit A.

[21] See id. at (B)(1).

counted for both farm and non-farm self-employment. Income
will be calculated by:

 (a) Multiplying by four the person's or family's income, as
applicable, for the three months preceding the date hospital
services were provided;

 (b) Using the person's or family's income, as applicable, for the
twelve months preceding the date hospital services were
provided.[22]

It is undisputed that the Ohio State Plan sets forth the eligibility

requirements for HCAP.  It is also undisputed that the federal government

provides the State of Ohio with federal matching payments for the HCAP

program.[23]

The PRRB, in a separate case, in 2005, reviewed the very issue which is the

subject of this motion, i.e. whether HCAP days should be included in the Medicaid Proxy

of the Medicare DSH calculation.  The PRRB unanimously held that the Intermediary

was wrong and the Hospital was right.  HCAP days must be included in the DSH

calculation:  "It is …undisputed that HCAP is included in the State of Ohio's approved

plan under title XIX and that HCAP gets Federal matching funds."  Ashtabula County

Med. Ctr. v. BlueCross BlueShield Assoc., decision 2005-D49 (August 10, 2005).[24]

"[T]he Board considers the Federal statute the controlling authority in this case . . . . The

Board finds the [statutory] language clear and unambiguous and finds that the federal

_____

22 See Exhibit A at (B)(2).

23 See Ashtabula County Medical Center v. BlueCross BlueShield Association, decision
   2005-D49 (August 10, 2005) attached as Exhibit B; see also Ashtabula County
   Medical Center, CMS Administrator Decision, October 12, 2005, attached as Exhibit C
   at 12.

24 See Exhibit B at 4.

DSH statute does not limit the patients covered to Medicaid patients only, but that it includes patients who qualify for 'medical assistance' under Ohio's HCAP State Plan that is approved under Title XIX."  Id.  "HCAP patient days should, therefore, be included in the calculation of the Medicaid proxy to determine the Providers' DSH adjustments."  Id.

The CMS Administrator promptly reversed the PRRB.[25]  This came as little surprise, however, because CMS has a history of reversing the PRRB on DSH matters, only to be ultimately corrected by the federal courts.  See, e.g. Alhambra v. Thompson, 259 F.3d 1071 (9th Cir. 2001); Odessa Regional Hospital v. Leavitt, 386 F.Supp. 2d 885 (W.D. Tex. 2005); Clark Regional Medical Center v. Shalala, 136 F. Supp. 2d 667 (E.D. Ky. 2001).

The CMS track record is no accident, but instead arises from what the courts have observed to be CMS's institutional hostility toward the DSH adjustment.  Cabell Huntington Hosp., Inc. v. Shalala, 101 F.3d 984, 990 (4th Cir.1996) ("We cannot . . . allow an agency, hostile from the start to the very idea of making the payments at issue, to rewrite the will of Congress.");  Jewish Hospital., Inc. v. Sec'y of Health & Human Servs., 19 F.3d 270, 276 (6th Cir.1994) ("[W]e find Jewish Hospital's contention that the Secretary was hostile to the concept of disproportionate share adjustment credible and compelling")(internal quotations omitted); Alhambra v. Thompson, 259 F.3d 1071 at n.4 (noting agreement with the Court in Jewish Hospital which found "credible and compelling evidence of Secretarial hostility to the concept of the disproportionate share adjustment.").  The Circuit Court for the District of Columbia observed that the Secretary's interpretation of the DSH statute has "fared poorly, being struck down in four

_____

[25] See Exhibit C at 13.

of our sister Circuits." <u>Monmouth Medical Center v. Thompson</u>, 257 F.3d 807, 810 (D.C. Cir. 2001). <u>See also</u> <u>Legacy Emanuel Hosp. & Health Ctr. v. Shalala</u>, 97 F.3d 1261 (9th Cir.1996); <u>Deaconess Health Serv. Corp. v. Shalala</u>, 83 F.3d 1041 (8th Cir.1996) (per curiam).

More recently, the Court of Appeals for the Ninth Circuit, in <u>Portland Adventist Medical Center v. Thompson</u>, 399 F.3d 1091, 1099 (9th Cir. 2005), found that the Secretary's refusal to include all appropriate patients days in the DSH calculation "appears to be the latest in a series of cases in which the Secretary has refused to implement the DSH provision in conformity with the intent behind the statute [citing <u>Alhambra</u>, <u>Cabell Huntington</u>, <u>Legacy Emanuel</u>, <u>Jewish Hosp.</u>, and <u>Deaconess Health Serv.</u>,]." The Court noted that "[i]n each of these cases, the court rejected the Secretary's position. The same result must follow here. The text of the statute, the intent of Congress, and the decisions of this and other courts make it plain that the entire low-income population actually served by the hospitals . . . must be accounted for in the DSH Medicaid fraction." <u>Portland Adventist Med. Ctr.</u>, 399 F.3d at 1099.

Based on the foregoing, all patient days for which the hospitals provided inpatient services to individuals eligible for HCAP (and who are not entitled to Medicare Part A benefits) must be included in the Medicaid Fraction of the DSH calculation. The Medicare statute requires that the Medicaid Fraction include "the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter, but who were not entitled to benefits under Part A of this subchapter [i.e. Medicare]...". <u>See</u> 42 U.S.C.§1395ww(d)(5)(F)(vi)(II). Because the HCAP program is

medical assistance offered to Ohio residents under Ohio's State Plan approved under Title XIX, days of service for which patients are eligible for inpatient care under HCAP should be included in the DSH calculation.

## CONCLUSION

The Hospitals have demonstrated that the Secretary's interpretation of the DSH calculation, an interpretation which excludes HCAP days from the Medicaid fraction of that calculation, violates the Medicare statute and is fundamentally inconsistent with congressional intent. The Hospitals are entitled, therefore, to summary judgment in their favor on Count I of their complaint.

Accordingly, the Hospitals respectfully request that this court issue an order (1) declaring that the Medicare statute requires the inclusion of HCAP days in the Medicaid proxy of the DSH calculation; (2) requiring the Secretary to instruct the Intermediary in Ohio that each of the Hospital's cost reports at issue must be corrected to include HCAP days, and each Hospital's DSH adjustment be recalculated in accordance with the Medicare statute and applicable regulations; (3) requiring the Secretary to instruct his Intermediary in Ohio to complete its audit, and make the resulting payment of additional Medicare DSH funds within 90 days of the Intermediary's receipt of the documentation from the Hospitals; (4) requiring that the payments to the Hospitals reflect all amounts to which the Hospitals are entitled under the Medicare DSH statute with HCAP days factored into the calculation and include an award of interest thereon pursuant to 42 U.S.C. § 1395oo(f)(2); and (5) declaring that this Court shall retain jurisdiction in this matter until the Secretary's recalculation of the Hospital's Medicare DSH percentages and subsequent payment to the Hospitals is complete.

Respectfully Submitted,


_____/s/  Murray J. Klein_
Murray J. Klein
DC Bar #492415
Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 facsimile
JBennett@ReedSmith.com

Dated:  February 1, 2006