IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ADENA REGIONAL MEDICAL CENTER, <u>et al.</u> | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. Action No. 05-2422 (GK) |
| MICHAEL O. LEAVITT, Secretary, United States Department of Health and Human Services, | ) ) ) ) | |
| Defendant. | ) ) ) ) | |

## <u>DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant, Michael O.

Leavitt, Secretary of the United States Department of Health and Human Services, hereby moves

for summary judgment because there is no genuine issue as to any material fact and Defendant is

entitled to judgment as a matter of law.

In support of this motion, defendant respectfully submits the attached memorandum in

support of his motion, statement of material facts not in genuine dispute, response to plaintiffs'

statement of facts, and a proposed order. The Certified Administrative Record has previously

been filed with the Court.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar No. 451058

_____/s/_____
PETER S. SMITH
Assistant United States Attorney
D.C. Bar No. 465131

Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 307-0372/FAX: (202) 514-8780


DAVID HOSKINS
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
330 Independence Ave., S.W., Room 5309
Washington, D.C. 20201


OF COUNSEL:

PAULA M. STANNARD
Acting General Counsel

KATHLEEN H. MCGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General Counsel
for Litigation

United States Department of Health
and Human Services

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADENA REGIONAL MEDICAL CENTER, <u>et al.</u><br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL O. LEAVITT,<br>Secretary, United States Department of<br>Health and Human Services,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civ. Action No. 05-2422 (GK) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

     Plaintiffs, Medicare-participating hospitals located in the State of Ohio, seek additional Medicare payment for services furnished to Medicare beneficiaries, and in doing so, challenge an interpretation of the Medicare statute by the Secretary of the United States Department of Health and Human Services. Though Plaintiffs contend that the Secretary's interpretation of the statutory provision at issue conflicts with the plain and unambiguous language of the statute, this is not the case. The Secretary's interpretation of the statute is reasonable and is entitled to deference.

     This case involves the complex interaction between provisions of the Medicare and Medicaid statutes. The Medicare statutory provision at issue provides additional Medicare payments to hospitals that serve a disproportionate share of low income patients, as determined in accordance with the statute and implementing regulations. The statute requires the Secretary to count, among other things, patient days of patients who are "eligible for medical assistance

under a State plan approved under title XIX [of the Social Security Act, i.e., the Medicaid statute]." Plaintiffs argue that this provision unambiguously requires the Secretary to count patient days of patients who are not so entitled, but who receive charity care from Ohio hospitals (pursuant to the State of Ohio's Hospital Care Assurance Program ("HCAP")). It is uncontested that such individuals do not meet the eligibility requirements for Medicaid benefits set forth in the Medicaid statute and the State of Ohio's title XIX (Medicaid) State plan. The short answer to plaintiffs' argument is that the Secretary has reasonably interpreted the statutory phrase "eligible for medical assistance under a State plan approved under title XIX" to mean eligible for Medicaid. This conclusion is evident from the text of the statute, the Secretary's regulations (including those subsequently ratified by Congress), and from decisions of several United States Courts of Appeals.

Plaintiffs concede that the patient days at issue in this case are attributable to patients who are not eligible for Medicaid, but they nevertheless attempt to pigeonhole the patient days at issue into the statute by arguing that because the Ohio State Medicaid plan conditions the eligibility of hospitals for Medicaid DSH payments, the recipients of the free care are somehow "eligible for assistance under the State plan." Plaintiffs' logic is faulty, however, and their alternative interpretation of statutory terms is clearly wrong. Plaintiffs' argument fails to demonstrate that the Secretary's interpretation of the statute is unreasonable. Indeed, the Social Security Act provisions at issue here do not unambiguously require the counting of the patient days at issue in this case, and this Court should defer to the Secretary's reasonable interpretation: in determining the numerator of the Medicaid fraction of the Medicare DSH calculation, the Secretary can reasonably exclude patient days of patients who are not eligible for Medicaid.

## BACKGROUND

**A.    Statutory and Regulatory Background**

**1.    Medicare and the DSH Adjustment.**

This case arises under Part A of the Medicare program, which provides payments for inpatient hospital services and related care. 42 U.S.C. §§ 1395c et seq. Since 1983, the operating costs of inpatient hospital services have been paid primarily through the Prospective Payment System (PPS), 42 U.S.C. § 1395ww(d). Generally speaking, an individual hospital's PPS payment is based on prospectively-determined national rates for each discharge, rather than on the actual operating costs incurred by the hospital. 42 U.S.C. § 1395ww(d)(1)-(4). However, the PPS contains a number of provisions that adjust payments on the basis of hospital-specific factors. See, e.g., id. § 1395ww(d)(5). This case involves one of those hospital-specific adjustments.

In 1986, Congress enacted a provision known as the Medicare disproportionate share hospital ("DSH") adjustment. Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, § 9105, 100 Stat. 82 (1986).[1] This provision requires the Secretary of the United States Department of Health and Human Services to provide increased PPS payments to hospitals that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). Congress enacted this provision because it determined that such

---

[1] The 1986 DSH provision at issue here was initially set to expire in 1988. See Pub. L. No. 99-272 § 9105(a), 100 Stat. 82. Congress provided several limited extensions, then in1990 extended the provision indefinitely. See Pub. L. No. 99-509 § 9306(c), 100 Stat. 1874, 1995 (1986 extension until 1989); Pub. L. No. 100-203 § 4003(c), 101 Stat. 1330-46 (1987 extension until 1990); Pub. L. No. 100-647 § 8401, 102 Stat. 3342, 3798 (1988 extension until 1995); Pub. L. 101-508 § 4002(b)(3), 104 Stat. 1388-32 (indefinite extension).

hospitals generally incur higher per-case Medicare costs. See, e.g., H.R. Rep. No. 99-241 at 16 (1986), reprinted in 1986 U.S.C.C.A.N. 579, 594.

Whether a hospital qualifies for the Medicare DSH adjustment, and how large an adjustment it receives if it does qualify, depend primarily on the hospital's "disproportionate patient percentage." See 42 U.S.C. § 1395ww(d)(5)(F)(v). Congress provided a statutory definition of "disproportionate patient percentage," which is codified at 42 U.S.C. § 1395ww(d)(5)(F)(vi). The definition of "disproportionate patient percentage" consists of two components. The first component, not relevant to this case, is known as the "Medicare fraction." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The second component, which is at the heart of this case, uses Medicaid eligibility as a proxy for low income. Known as the "Medicaid fraction," it is defined as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of *patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter* [i.e., the Medicaid program], but who were not entitled to benefits under part A of this subchapter [i.e., the Medicare program], and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). Generally under this equation, a hospital's Medicare DSH adjustment grows as the count of patient days in the numerator of the Medicaid fraction increases. See id.; 42 U.S.C. § 1395ww(d)(5)(F)(vii)- (xiii).

## 2.    The Medicaid Program

Medicaid (as opposed to Medicare) is a cooperative federal-state program to provide medical assistance to low-income persons. See 42 U.S.C. §§ 1396 - 1396v; 42 C.F.R. §§ 430.0 et seq. (2002) (implementing regulations). In order to participate in the Medicaid program, a State must submit a plan for medical assistance, known as the "State plan," to the Centers for

-4-

Medicare & Medicaid Services ("CMS") (formerly known as the Health Care Financing Administration ("HCFA")), which administers Medicaid on behalf of the Secretary.  42 U.S.C. § 1396a.  The State plan specifies, inter alia, the categories of individuals who will receive medical assistance under the plan and the specific kinds of medical care and services that will be covered. If the plan is approved by the Secretary, the State is thereafter eligible to be reimbursed by the federal government for a specified percentage (the "Federal medical assistance percentage") of the amounts "expended . . . as medical assistance under the State plan."  Id. §§ 1396b(a)(1), 1396d(b).  This federal reimbursement is known as federal financial participation, or "FFP."

The Medicaid statute establishes a number of requirements that must be met in order for a State plan to be approved.  See generally 42 U.S.C. § 1396a(a)(1)-(65).  One such requirement is that a State plan must make medical assistance available to certain "categorically needy" persons. Id. § 1396a(a)(10)(A)(i).  At the State's option, the plan may also make medical assistance available to "medically needy" persons.  Id. § 1396a(a)(10)(C).

The Medicaid statute sets forth a number of requirements, including income and resource limitations, that apply to individuals who wish to receive medical assistance under the State plan. See, e.g. 42 U.S.C. §§ 1396a(a)(10)(A)(i)(IV), (VI), (VII); see also id. 1396b(f).  Individuals who do not meet the applicable requirements, either by reason of their income levels or for other reasons, are not eligible for medical assistance under the State plan.

### 3.    Medicaid DSH Payments.

In addition to the medical assistance the State plan must provide to Medicaid beneficiaries, a State plan must also provide for additional payments to hospitals that treat a disproportionate share of low-income patients with special needs.  42 U.S.C. § 1396a(a)(13)(A). The Medicaid DSH payment is separate and distinct from the Medicare DSH payment.  "The

purpose of Medicaid DSH payment adjustment is to assist those facilities with high volumes of Medicaid patients in meeting the costs of providing care to the uninsured patients that they serve, since these facilities are unlikely to have large numbers of privately insured patients through which to offset their operating loses on the uninsured." H. R. Conf. Rpt. 103-111, at 211 (1993), reprinted in 1993 U.S.C.C.A.N. 378, 538.

In order to ensure that State Medicaid programs take into account the situation of hospitals that serve a disproportionate share of low-income patients with special needs, Congress in 1981 added to the Social Security Act a general mandate that State plans provide for payment rates for hospital services that take into account the situation of such hospitals. 42 U.S.C. § 1396a(a)(13)(A). In 1987 and 1988, Congress added specific requirements for states to comply with this general mandate through higher payments to designated hospitals. 42 U.S.C. § 1396r-4; Pub. L. No. 100-203, § 4112, as amended by Pub. L. No. 100-60, § 411(k). In 1991, Congress repealed statutory language that precluded the Secretary from limiting state DSH payments, 42 U.S.C. § 1396a(h), and directed the Secretary to determine state-specific limits on federal funding for Medicaid DSH payments for each fiscal year, using a statutory formula. 42 U.S.C. § 1396r-4(f); Pub. L. No. 102-234, § 3.

In 1993, Congress further restricted Medicaid DSH payments by imposing hospital-specific limits on those payments. 42 U.S.C. § 1396r-4(g), Pub. L. No. 103-66, § 13621. This provision limits the amount of Medicaid DSH payments to a specific hospital to

> the costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this title, other than under this section, and by uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year.

42 U.S.C. § 1396r-4(g)(1)(A). In other words, a Medicaid DSH payment may not exceed the hospital's Medicaid shortfall (the amount by which the costs of treating Medicaid patients exceeds hospital's Medicaid payments) plus the cost of treating the unsured.

### 4.    Administrative Appeals Process.

Fiscal intermediaries act as the agents of the Secretary in reviewing annual Medicare cost reports submitted by hospitals and in administering Medicare payments to the hospitals. In administering payments, an intermediary reviews the hospital's cost report and issues a "Notice of Amount of Program Reimbursement" ("NPR"), which identifies the amount the hospital will be paid by Medicare for that cost report year. If a provider disagrees with the determination, and if the disputed amount exceeds $10,000, the provider may request an administrative hearing before the Provider Reimbursement Review Board ("PRRB" or "Board"). 42 U.S.C. § 1395oo(a). The Medicare statute also provides for "expedited judicial review" ("EJR") in lieu of an administrative hearing, where the Board determines that it lacks authority to decide a question of law presented by an administrative appeal. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842. The PRRB's decision is final, unless the Secretary, acting through the CMS Administrator, within 60 days, reverses, affirms, or modifies the decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1871(b), 405.1875(a). Providers may obtain judicial review of a "final decision" of the PRRB, or the Secretary, if the Secretary exercises his right of review. 42 U.S.C. § 1395oo(f)(1).

### B.    Factual Background.

Plaintiffs are twenty-five hospitals located in the State of Ohio, each of which seeks additional Medicare payment for hospital inpatient services furnished during individual hospital cost years. Complaint ¶ 54; Certified Administrative Record ("A.R.") at 4-12; (also Exhibit A to

Complaint). In determining the amount of Medicare payment for plaintiff hospitals for the fiscal years at issue in this case, the fiscal intermediary did not count, in the numerator of the Medicaid fraction of the Medicare DSH calculation, patient days of patients who received charity care from plaintiffs (pursuant to HCAP) but who are not eligible for Medicaid.

For the time period at issue in this case, the State of Ohio had a State plan for medical assistance approved by the Secretary under Title XIX of the Social Security Act. Complaint ¶ 50; Answer ¶ 50. Under the terms of the State plan, Ohio makes an additional payment to hospitals that serve a disproportionate share of patients with special needs. 42 U.S.C. § 1396a(a)(13)(A); 42 U.S.C. § 1396r-4. The Ohio State plan refers to this system as the Hospital Care Assurance Program ("HCAP"). Exhibit A to Memorandum in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' MSJ"); Exhibit C to Pls' MSJ at 2.

Section 5112.17(B) of the Ohio Revised State code explicitly states that hospitals receiving Medicaid DSH payments must provide a minimal amount of care free of charge to patients who "are not recipients of the medical assistance program, and whose income is at or below the federal poverty guidelines." Id. Section 5111.01 of the Ohio Revised State Code defines "medical assistance program" or "medicaid" as "the program that is authorized by this chapter and provided by the department of job and family services under this chapter, Title XIX of the 'Social Security Act,' 79 Stat 286 (1965), 42 U.S.C.A. § 1396, as amended, and the waivers of Title XIX requirements granted to the department by the health care financing administration of the United States department of health and human services." According to plaintiffs, HCAP is "designed to reach those individuals whose income is at or below the federal poverty line and who were not recipients of Medicaid," A.R. at 88 (emphasis added), and "beneficiaries of [HCAP] are not eligible for Medicaid," id. at 89.

Plaintiffs filed cost reports for each of the individual cost reporting periods at issue in this case, and the fiscal intermediaries issued Notices of Program Reimbursement ("NPRs") for each of the cost reports. A.R. 2-12. For the appeals in this case, the Provider Reimbursement Review Board ("PRRB") found that it had jurisdiction over the claims, but lacked authority to decide the "legal question of whether 42 C.F.R. § 412.106" was valid . A.R. 2-3. The PRRB granted expedited judicial review on December 7, 2005. Id. Plaintiffs subsequently filed the instant action.[2]

## ARGUMENT

### I.    STANDARD OF REVIEW.

Summary judgment is appropriate where "there is no genuine issue of material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is properly regarded "not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celetox Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

### II.    THE MEDICARE STATUTE DOES NOT UNAMBIGUOUSLY REQUIRE THE COUNTING OF THE PATIENT DAYS AT ISSUE IN THIS CASE, WHICH ARE ATTRIBUTABLE TO PATIENTS WHO ARE NOT ELIGIBLE FOR MEDICAID.

Plaintiffs in this case challenge the Secretary's interpretation of the Medicare statute, arguing that the statute unambiguously requires the Secretary to count the patient days at issue in the numerator of the Medicaid fraction of the Medicare DSH calculation. In Chevron USA, Inc.

---

[2] Plaintiffs filed their dispositive motion in this case prior to the deadline for Defendant's answer and prior to the filing of the administrative record in this case. Thus, the procedural posture of Plaintiffs' motion raises questions about whether it relies on extra-record material.

v. Natural Resources Defense Council, Inc., 467 US. 837, 844 (1984), the Supreme Court

"recognized that considerable weight should be accorded to an executive department's

construction of a statutory scheme it is entrusted to administer."  The familiar two-prong

Chevron analysis governs the Court's inquiry into plaintiffs' claims here.  The first question

under Chevron is "whether Congress has directly spoken to the precise question at issue.  If the

intent of Congress is clear, that is the end of the matter."  Id. at 842.  If, however, the statute is

"silent or ambiguous with respect to the specific issue," the court must proceed to the second

prong of Chevron, under which the "question for the court is whether the agency's answer is

based on a permissible construction of the statute."  Id. at 843.  See also Holly Sugar Corp. v.

Johanns, 437 F.3d 1210, 1213 (D.C. Cir. 2006); County of Los Angeles v. Shalala, 192 F.3d

1005, 1012-1013 (D.C. Cir. 1999).

 Under the second prong of Chevron, the "view of the agency charged with administering

the statute is entitled to considerable deference; and to sustain it, [the Court] need not find that it

is the only permissible construction that [the agency] might have adopted."  Chemical Mfrs.

Ass'n v. Natural Resources Defense Council, Inc., 470 U.S. 116, 125 (1985).  Such deference is

especially appropriate in cases, such as this one, brought under the Medicare statute, because that

statute "is among the most intricate ever drafted by Congress," and Congress accordingly has

"conferred on the Secretary exceptionally broad authority to prescribe standards" for applying

section of the Act.  Schweiker v. Grey Panthers, 453 U.S. 34, 43 (1981).

  A. The Secretary's interpretation of the statutory phrase "eligible for medical
    assistance under a State plan" is reasonable and is entitled to deference.

 The "precise question at issue" in this case is whether the Medicare statute requires the

Secretary to count, in the numerator of the Medicaid fraction of the Medicare DSH calculation,

patient days of individuals who are not eligible for Medicaid but who receive charity care from Ohio hospitals as a condition of the hospitals receiving a DSH payment under the <u>Medicaid</u> program.

The Medicare DSH statute defines the numerator of the Medicaid fraction of the Medicare DSH calculation as "the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX [of the Social Security Act], but who were not entitled to benefits under part A of [Medicare]." 42 U.S.C. § 1395ww(d)(5)(F)(vi). Plaintiffs assert that this statutory language is "explicit and clear," Plaintiffs' MSJ at 11, but the statute does not directly address the factual scenario presented by this case. The Secretary has interpreted "eligible for medical assistance under a State plan approved under title XIX" as meaning eligible for Medicaid. <u>See</u> 42 C.F.R. § 412.106(b)(4) (1999) (The fiscal intermediary determines "the number of the hospital's patient days of service for which patients were eligible for Medicaid but were not entitled to Medicare Part A . . . ."). An individual is eligible for Medicaid if he or she meets the eligibility criteria and standards set forth in the Medicaid statute and the applicable Medicaid State plan.

As stated earlier, the Medicaid statute establishes a number of requirements that must be met in order for a Medicaid State plan to be approved. <u>See</u> <u>generally</u> 42 U.S.C. §§ 1396a(a)(1)(65). One such requirement is that a State plan must make medical assistance available to certain "categorically needy" persons. <u>Id.</u> § 1396a(10)(A)(i). At the State's option, the plan may also make medical assistance available to "medically needy" persons. <u>Id.</u> § 1396a(a)(10)(C).

The Medicaid statute sets forth a number of requirements, including income and resource limitations, that apply to individuals who wish to receive medical assistance under the State plan. See, e.g., 42 U.S.C. §§ 1396a(a)(10)(A)(i)(IV), (VI), (VII); see also id. § 1396b(f).  Individuals who meet the applicable eligibility requirements and limitations are eligible for medical assistance under the State plan, that is, eligible for Medicaid benefits; conversely, individuals who do not meet the applicable eligibility requirements and limitations, either by reason of their income levels or other reasons, are not eligible for medical assistance under the State plan.

Plaintiffs concede that the patient days at issue in this case are attributable to patients who are not eligible for Medicaid.  See Certified Administrative Record ("A.R.") at 88-89 (HCAP was "designed to reach those individuals whose income is at or below the federal poverty line and who were not recipients of Medicaid"; "beneficiaries of [HCAP] are not eligible for Medicaid").  Nevertheless, plaintiffs argue that the Medicare statute unambiguously requires the Secretary to count the patient days at issue.  But nothing in the statutory language compels the conclusion that the numerator of the Medicaid fraction of the Medicare DSH calculation must include patient days of patients who are not eligible for Medicaid.

In calculating the numerator of the Medicaid fraction of the Medicare DSH calculation, the Secretary counts patient days of patients who meet the eligibility criteria and standards set forth in the Medicaid statute and the State plan approved under title XIX.  This interpretation is entirely consistent with the text of the statute and the statutory scheme, and consequently must be upheld under the deferential standard articulated in Chevron.

B.     The only federal courts of appeals to have addressed this question have adopted the position that "eligible for medical assistance under a State plan approved under title XIX" means eligible for Medicaid.

Plaintiffs' ironically cite a number of cases addressing the numerator of the Medicaid fraction of the Medicare DSH calculation in support of their argument that the Secretary's interpretation of that section is unreasonable.  In fact, these cases stand for the proposition that the phrase "eligible for medical assistance under a State plan" refers to individuals who are eligible for Medicaid.  See Cabell Huntington Hosp. Inc., v. Shalala, 101 F.3d 984 (4th Cir. 1996); Jewish Hospital Inc. v. Sec'y of Health & Human Servs., 19 F.3d 270 (6th Cir. 1994); Legacy Emanuel Hosp. & Health Ctr. v. Shalala, 97 F.3d 1261 (9th Cir. 1996); Deaconess Health Serv. Corp. v. Shalala, 83 F.3d 1041 (1996).  In Jewish Hospital, the majority opinion stated:

> Looking to the plain language of the statute, the word "eligible" refers to whether a patient is capable of receiving federal medical assistance or *Medicaid*. There is no indication from the text of the statute that Congress intended to impute any special meaning to the term, eligible. Additionally, the phrase, "the number of the hospital's patient days for such period," modifies the term eligible. Facially, this phrase speaks to the aggregate number of days for which a hospital provides *Medicaid eligible services*. Thus, it appears that all days for which an individual is capable of receiving *Medicaid* should be figured into the proxy calculation.

19 F.3d at 274 (emphasis added).  See also Cabell Huntington, 101 F.3d at 889 ("It is apparent that 'eligible for medical assistance under a State plan' refers to patients who meet the income, resource, and status qualifications specified by a particular state's Medicaid plan . . . ."); Legacy Emanuel, 97 F.3d at 1264 ("[T]he word 'eligible' refers to whether a patient is capable of receiving . . . Medicaid."); id. at 1265 ("We believe the language of the Medicare reimbursement provision is clear:  the Medicaid proxy includes all patient days for which a person was eligible for Medicaid benefits, whether or not Medicaid actually paid for those days of service.").  Similarly, the legislative history also supports the Secretary's view that the numerator of the

Medicaid fraction of the Medicare DSH calculation is tied to eligibility for Medicaid. See, e.g.,

H.R. Rep. No. 99-241 at 16 (1986), reprinted in 1986 U.S.C.C.A.N. 579, 594. ("The proxy

measure for low-income would be the percentage of a hospital's total patient days attributable to

medicaid patients . . . .")  Plaintiffs do not acknowledge this contrary authority, nor can they

explain it away.

>    C.    Plaintiffs' arguments that the statute unambiguously requires the Secretary
>          to count patient days of certain patients who are not eligible for Medicaid
>          lack merit.

Plaintiffs do not explain, because they cannot, how the Secretary's interpretation of the

Medicare DSH statute, 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II), is unreasonable.  Instead, plaintiffs

offer an alternative interpretation.  But the fact that Plaintiffs can fashion an alternative

interpretation, which they may prefer, is irrelevant.  The law is clear that the question is not

whether the Secretary's interpretation is the best interpretation, but whether it is permissible.

Chevron at 843.

Even if, contrary to law, Plaintiffs' merely needed to offer a better interpretation than the

Secretary's, Plaintiffs' interpretation is clearly incorrect and should be rejected for that reason.

Plaintiffs' first argument is that the Medicaid State Plan is a physical document and, by referring

to that document, one can conclude that the charity care patients at issue here must be counted as

"eligible for medical assistance under a State plan approved under title XIX."  Plaintiffs' MSJ at

11.  Plaintiffs' conclusion reflects faulty logic.  By its own terms, HCAP sets forth requirements

for the "eligibility" of hospitals to receive Medicaid DSH payments; HCAP does not set forth

criteria, standards, requirements, and limitations for eligibility of individuals to qualify for

Medicaid benefits under the State plan.  As stated earlier, plaintiffs concede that the charity care

patients at issue are not eligible for Medicaid.

-14-

The only connection that the charity care patients at issue have to the Medicaid State plan is that they receive free medical care as a condition of hospitals receiving a Medicaid DSH payment. But this connection does not make them "eligibile" for medical assistance under the State plan. In fact, in order to qualify for charity care, the individuals at issue <u>cannot</u> be eligible for medical assistance under the State plan approved under title XIX. <u>See</u> Ashtabula County Medical Center, CMS Administrator Decision at 11, Exhibit C of Plaintiffs' MSJ. Section 5112.17(B) of the Ohio Revised State code explicitly states that hospitals receiving Medicaid DSH payment must provide a minimal amount of care free of charge to patients who "are not recipients of the medical assistance program, and whose income is at or below the federal poverty guidelines." <u>Id.</u> Section 5111.01 of the Ohio Revised State Code, in turn, defines "medical assistance program" or "medicaid" as "the program that is authorized by this chapter and provided by the department of job and family services under this chapter, Title XIX of the 'Social Security Act' 79 Stat. 286 (1965), 42 U.S.C.A. § 1396, as amended, and the waivers of Title XIX requirements granted to the department by the health care financing administration of the United States department of health and human services."

Plaintiffs attempt to escape this inherent contradiction in their position by offering an alternative interpretation of "eligible for medical assistance under a State plan approved under title XIX." According to plaintiffs, HCAP is a "<u>form of</u> medical assistance which is part of the Ohio State plan approved under Title XIX of the Social Security Act." Plaintiffs' Statement of Material Facts As To Which There Is No Genuine Issue, ¶ 1 (emphasis added). Plaintiffs argue that, because charity care is allegedly a "form of" medical assistance, the patient days at issue must be included. But the Secretary has reasonably interpreted "eligible for medical assistance

under a State plan approved under title XIX" to mean eligible for Medicaid benefits, and this interpretation is entitled to deference.

Plaintiffs rely on the decision of the Provider Reimbursement Review Board ("PRRB") in the Ashtabula matter, Plaintiffs' MSJ at 13-14, but they fail entirely to address the reasoning, which led the CMS Administrator to reverse the PRRB's decision.  The decision of the CMS Administrator, see Exhibit C of Plaintiffs' MSJ, concluded that "the days at issue are related to individuals that are specifically identified as not eligible for medical assistance under an approved Title XIX State plan."  Id. at 11.

> D.    Plaintiffs' reliance on court decisions addressing Medicare DSH is misguided.

As an initial matter, the D.C. Circuit has stated explicitly that Chevron deference applies notwithstanding any such alleged hostility.  See North Broward Hosp. Dist. v. Shalala, 172 F.3d 90, 94 (D.C. Cir. 1999).  Plaintiffs contend, without support, that the Secretary's decision not to include charity care days arises from the Secretary's "hostility" toward the Medicare DSH payment.  Plaintiffs have to rely upon such ad hominem attacks to divert the Court from the central weakness of their argument: it is fundamentally reasonable for the Secretary to exclude patients, which according to the Ohio State plan's own terms, are not eligible for Medicaid, from the count of patients "eligible for medical assistance under a State plan approved under Title XIX."  There is nothing hostile about this position.  Moreover, the fact that the Secretary's interpretation of the law may have been rejected by earlier courts does not mean that his interpretation on a separate, although related, question is not entitled to the standard of review articulated by the Supreme Court in Chevron.  North Broward Hosp. Dist. at 94.

Plaintiffs also appear to argue that any patient days in some way connected to the Medicaid State plan must be counted by the Secretary regardless of whether the patient days are for patients who meet the eligibility criteria and standards set forth in the Medicaid statute and applicable Medicaid State plan. Plaintiffs rely heavily on the 9th Circuit's decision in <u>Portland Adventist Medical Center v. Thompson</u>, 399 F.3d 1091 (9th Cir. 2005). In <u>Portland Adventist</u>, the court addressed the question of whether patient days of patients who were eligible for medical assistance under a demonstration project approved under section 1115 of the Social Security Act ("section 1115 expansion populations") must be included in the numerator of the Medicaid fraction of the Medicare DSH calculation. The 9th Circuit held that section 1115 expansion populations were eligible for medical assistance under the State plan and therefore held that the Secretary's pre-January of 2000 policy of not counting them conflicted with the language of 42 U.S.C. § 1395ww(d)(5)(F)(i)(II). In reaching this conclusion, the court specifically relied upon language in section 1115 of the Social Security Act (42 U.S.C. § 1315) which is specifically *not* applicable here. Ohio's charity care population is not a demonstration project approved and Portland Adventist is simply inapposite in this case.

In any event, Congress has expressly provided that the 9th Circuit's view that section 1115 expansion populations are eligible for medical assistance under a State plan approved under title XIX (and thus must be included  by the Medicare DSH statute) is wrong. Specifically, Congress clarified the law by amending 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) in the Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 5002, 120 Stat. 4, * (2006) ("DRA"). In pertinent part, the Act states:

SEC. 5002. CLARIFICATION OF DETERMINATION OF MEDICAID PATIENT DAYS FOR DSH COMPUTATION.

(a) IN GENERAL- Section 1886(d)(5)(F)(vi) of the Social Security Act (42 U.S.C. 1395ww(d)(5)(F)(vi)) is amended by adding after and below subclause (II) the following:

> `In determining under subclause (II) the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under title XI.'.

(b) RATIFICATION AND PROSPECTIVE APPLICATION OF PREVIOUS REGULATIONS-

(1) IN GENERAL- Subject to paragraph (2), regulations described in paragraph (3), insofar as such regulations provide for the treatment of individuals eligible for medical assistance under a demonstration project approved under title XI of the Social Security Act under section 1886(d)(5)(F)(vi) of such Act, are hereby ratified, effective as of the date of their respective promulgations.

(2) NO APPLICATION TO CLOSED COST REPORTS- Paragraph (1) shall not be applied in a manner that requires the reopening of any cost reports which are closed as of the date of the enactment of this Act.

(3) REGULATIONS DESCRIBED- For purposes of paragraph (1), the regulations described in this paragraph are as follows:

(A) 2000 REGULATION- Regulations promulgated on January 20, 2000, at 65 Federal Register 3136 et seq., including the policy in such regulations regarding discharges occurring prior to January 20, 2000.

(B) 2003 REGULATION- Regulations promulgated on August 1, 2003, at 68 Federal Register 45345 et seq.

Thus, section 5002 of the DRA unequivocally states that section 1115 expansion populations are not eligible for medical assistance under a State plan, and it ratifies the regulations relating to the Secretary's treatment of section 1115 expansion populations for purposes of the Medicare DSH calculation. Congress has, therefore, expressly ratified the regulations and policies relating to the Secretary's treatment of section 1115 expansion populations for the purpose of the DSH

calculation.  Pub. L. No. 109-171, § 5002, 120 Stat. 4, * (2006).  This court should place no weight on a decision of a Court of Appeals which, in the first instance is not applicable to the facts of this case, and which was specifically disavowed by Congress through a statutory clarification.

## <u>CONCLUSION</u>

For the foregoing reasons, the Secretary's exclusion of the patient days at issue in this case reflects a reasonable interpretation of the Medicare statute and should be upheld under the deferential <u>Chevron</u> standard.  Accordingly, the defendant respectfully requests that the Court grant defendant's motion for summary judgment and dismiss plaintiffs' complaint with prejudice.[3]

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar No. 451058


_____/s/_____
PETER S. SMITH
Assistant United States Attorney
D.C. Bar No. 465131
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 307-0372/FAX: (202) 514-8780


DAVID HOSKINS
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
330 Independence Ave., S.W., Room 5309
Washington, D.C. 20201

---

[3] In the event the Court grants plaintiffs' motion for summary judgment and denies Defendant's motion for summary judgment, the proper course of action would be for the Court to remand the matter to the agency.  Plaintiffs' request for relief, Plaintiffs' MSJ at 16, is inappropriate.

OF COUNSEL:

PAULA M. STANNARD
Acting General Counsel

KATHLEEN H. MCGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General Counsel
for Litigation

United States Department of Health
and Human Services