IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ADENA REGIONAL MEDICAL CENTER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL O. LEAVITT,<br>Secretary, United States Department of<br>Health and Human Services,<br><br>Defendant. | Civ. Action No. 05-2422 (GK) |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs in this case challenge an interpretation of the Medicare statute by the Secretary of the United States Department of Health and Human Services. In the government's opening memorandum, the Secretary argued that his interpretation of the statute is reasonable and is entitled to deference. ("Def's MSJ") at 10-12. In their Opposition and Reply to the Defendant' Memorandum in Support of their Cross-Motion for Summary Judgment ("Pls.' Reply"), plaintiffs fundamentally mischaracterize the Secretary's position and misapply the Chevron standard that governs this case. Specifically, plaintiffs argue that: (1) the statute refers to the State plan approved under title XIX; (2) the State plan approved under title XIX is a physical document (Pls.' Reply at 17); (3) HCAP is mentioned in the State plan; and (4) applying plaintiffs' interpretation of the term "medical assistance," the patients at issue are receiving medical assistance "under" the State plan. Under plaintiffs' theory, the Secretary is therefore

unambiguously required to include these patients in the Medicaid share of the Medicare DSH calculation.

The Medicare statutory provision at issue provides additional Medicare payments (Medicare "DSH" payments) to hospitals that serve a disproportionate share of low income patients, as determined in accordance with the statute and implementing regulations. The <u>Medicare</u> provision at issue refers to the <u>Medicaid</u> statute. The statute requires the Secretary to count, among other things, patient days of patients who are "eligible for medical assistance under a State plan approved under title XIX [of the Social Security Act, i.e., the Medicaid statute]." As reflected in the governing regulations, the Secretary interpreted the quoted statutory phrase as meaning "eligible for Medicaid." The Secretary counts patient days of patients eligible for Medicaid in calculating the numerator of the "Medicaid fraction" (or "Medicaid proxy"), a component of the Medicare DSH calculation.

In determining the amount of Medicare reimbursement due to plaintiff hospitals for the fiscal years at issue in this case, the Secretary did not count the patient days at issue, which are attributable to patients who are not eligible for Medicaid but who receive charity care from Ohio hospitals (pursuant to the State of Ohio's Hospital Care Assurance Program ("HCAP")). It is uncontested that such individuals do not meet the eligibility requirements for Medicaid benefits set forth in the Medicaid statute and the State of Ohio's title XIX (Medicaid) State plan. Nevertheless, plaintiffs argue that the statute clearly requires the Secretary to count the patient days attributable to these patients in the numerator of the Medicaid fraction of the Medicare DSH calculation.

This memorandum addresses the arguments in plaintiffs' opposition and reply memorandum. Plaintiffs's assertions are at times simply wrong and at times puzzling: plaintiffs mischaracterize the Secretary's position, apply faulty logic and analysis regarding statutory

-2-

interpretation and deference, and draw erroneous conclusions. Nothing in plaintiffs' arguments demonstrates that the Secretary's interpretation of the statute is unreasonable. The statutory provision at issue here does not unambiguously require the counting of the patient days at issue in this case. On the contrary, the statutory provision at issue involves the complex interaction of the Medicare and Medicaid statutes, and this Court should defer to the Secretary's reasonable interpretation regarding the numerator of the Medicaid fraction of the Medicare DSH calculation.

## ARGUMENT

### I. PLAINTIFFS FUNDAMENTALLY MISCHARACTERIZE THE SECRETARY'S POSITION.

Plaintiffs challenge the Secretary's interpretation of the statutory phrase "eligible for medical assistance under a State plan approved under Title XIX of the [Social Security] Act." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). As reflected in applicable regulations, the Secretary interpreted this statutory phrase to mean "eligible for Medicaid." See 42 C.F.R. § 412.106(b)(4) (1999); Pls.' Reply at 8. As an initial matter, plaintiffs incorrectly indicate that the Secretary takes the position that "non-Medicaid days must be categorically excluded." Pls.' Reply at 1; see also id. at 5-8.

According to plaintiffs, the Secretary's position is that the Medicare statute unambiguously prohibits the counting of non-Medicaid patient days in the Medicaid fraction of the Medicare DSH calculation. This characterization reflects a fundamental misunderstanding of the Secretary's position and does not frame the issues properly. The question in this case is whether the statute unambiguously requires the counting of the patient days at issue in this case, which are attributable to patients who are not eligible for Medicaid but who receive charity care pursuant to Ohio's Hospital Care Assurance Program ("HCAP"); under HCAP, hospitals can

-3-

qualify for Medicaid DSH payments if they provide charity care to qualifying individuals who do not meet the eligibility criteria for Medicaid benefits.[1]  Contrary to plaintiffs' erroneous characterization, the Secretary does not (and need not) argue that the statute unambiguously prohibits the counting of the non-Medicaid patient days at issue; rather, the Secretary argues that he reasonably excluded the non-Medicaid patient days because the statute does not unambiguously require their inclusion.  As explained below, the Secretary's interpretation of the Medicare statute is reasonable and is entitled to deference.

> II.  **THE SECRETARY'S INTERPRETATION OF THE STATUTORY PHRASE "ELIGIBLE FOR MEDICAL ASSISTANCE UNDER A STATE PLAN APPROVED UNDER TITLE XIX" IS REASONABLE AND IS ENTITLED TO DEFERENCE.**

The question in this case is whether the Medicare statute requires the Secretary to count, in the numerator of the Medicaid fraction of the Medicare DSH calculation, patient days of patients who are not eligible for Medicaid but who receive charity care from Ohio hospitals pursuant to the State of Ohio's Hospital Care Assurance Program ("HCAP").

> A.  **The Statute Does Not Unambiguously Require the Inclusion of Non-Medicaid Patient Days in the Numerator of the Medicaid Fraction of the Medicare DSH Calculation.**

The Medicare statutory provision does not explicitly refer to the category of patient days at issue in this case. – 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) does not mention HCAP specifically or programs like HCAP.  Plaintiffs argue that the statute does not prohibit ("categorically exclude") non-Medicaid patient days.  Pls.' Reply at 5.  Put another way, plaintiffs argue that the statutory phrase "medical assistance under a State plan approved under title XIX of the [Social

---

[1] Medicaid DSH payments are a supplemental Medicaid payment to hospitals that serve a disproportionate share of low income patients.  See 42 U.S.C. § 1396r-4.

Security] Act" clearly and unambiguously means something other than Medicaid and requires the counting of non-Medicaid days. Plaintiffs' position does not withstand scrutiny.

Title XIX of the Social Security Act, referenced in 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II), is the Medicaid statute. See Complaint, ¶ 46 ("Congress enacted Title XIX of the Social Security Act ('Medicaid') in 1965.") Thus, the DSH provision of the Medicare statute specifically refers to the Medicaid statute which in turn, defines "medical assistance" at 42 U.S.C. § 1396d(a). Nevertheless, plaintiffs argue that the term "medical assistance" as used in the Medicare statute must (unambiguously) have a different meaning than the same term as used in the Medicaid statute. Plaintiffs further argue that the term "medical assistance" as used in the Medicare statute is clear. Pls.' Reply at 9-10. In support of this argument, plaintiffs provide dictionary definitions of terms "medical" and "assistance." Pls.' Reply at 10. But plaintiffs also assert (in supporting a different point): "The words 'medical assistance' are not defined in the Medicare statute." Pls.' Reply at 9. And nothing in the statutory language shows Congressional intent to prohibit the Secretary from interpreting the term "medical assistance" (as used at 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)) in light of the Medicaid statute. To the extent that the term "medical assistance" is not defined by the Medicare statute, the Court should defer to the Secretary's reasonable interpretation of that term.

In arguing that the statute is clear, plaintiffs make the somewhat astonishing argument that, in construing "eligible for medical assistance under a State plan approved under title XIX [of the Social Security Act]," the Secretary (and the Court) <u>must ignore</u> title XIX of the Social Security Act. Pls.' Reply at 9-10. Plaintiffs urge the Court to look at the words "medical assistance" in isolation and apply the dictionary definition of the individual words. But "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering

the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. United States Postal Serv., 126 S. Ct. 1252, 1257 (2006).  Here, the Secretary, in interpreting the statutory phrase "eligible for medical assistance under a State plan approved under title XIX [of the Social Security Act]," reasonably looked to title XIX.  Title XIX of the Social Security Act provides definitions of "medical assistance" ( 42 U.S.C. § 1396d(a)) and "State plan" (42 U.S.C. § 1396a) and criteria for approval of State plans.  Id.

Plaintiffs also argue that had "Congress had intended 'eligible for medical assistance' to mean 'eligible for Medicaid,' it could have used those words . . . ."  Pls.' Reply at 17.  Congress, however, likely would have used the language it did to refer to Medicaid eligible patients, given that "medical assistance" and "State plan" are terms defined in Title XIX and "Medicaid" is not.  See 42 U.S.C. § 1396a; 42 U.S.C. § 1396d.  In any event, this argument also applies to plaintiffs' position – if Congress had unambiguously intended to require the counting of the patient days at issue in this case in the numerator of the Medicaid fraction of the Medicare DSH calculation, it could have explicitly referenced either HCAP specifically or patients who are not eligible for Medicaid but who receive charity care pursuant to a Medicaid DSH program.  Plaintiffs themselves refer to the calculation at issue as the "Medicaid Proxy" (Complaint ¶¶ 42, 44), but they argue that the statute unambiguously requires the Medicaid Proxy to include non-Medicaid patient days.  The Secretary respectfully submits that the Medicare statute does not unambiguously require the counting of the patient days at issue in this case.

Plaintiffs also cite the Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 5002, 120 Stat. 4, * (2006) ("DRA") to support their position.  Pls.' Reply at 2, 6. Section 5002 of the DRA provides:

> In determining under subclause (II) the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, the Secretary **may**, to the extent and for the period the Secretary **determines appropriate**, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under title XI.  (Emphasis added.)

This provision clarifies that the Secretary is authorized, <u>but not required</u>, to count patient days attributable to section 1115 expansion populations[2], who are not eligible for medical assistance under a State plan approved under title XIX but who are eligible for medical assistance under a demonstration project approved under title XI of the Social Security Act.

The DRA provision does not address the patient days at issue in this case, and it does not say that Congress intended to require that non-Medicaid patient days in general must be included in the numerator of the Medicaid fraction of the Medicare DSH calculation.  Section 5002 of the DRA clarifies that the Secretary is authorized – but not required – to count, in the numerator of the Medicaid fraction of the Medicare DSH calculation, the specific category of non-Medicaid patient days referenced in the provision.  It does not follow that the Secretary is (unambiguously) required to count other categories of non-Medicaid patient days, such as those at issue in this case.

      B.      **The Secretary's Interpretation of the Statute is Reasonable.**

Plaintiffs argue that the Secretary's interpretation of the statute is unreasonable.  Pls.' Reply at 16 <u>et seq</u>.  As reflected in the governing regulations, <u>see</u> 42 C.F.R. § 412.106(b)(4) (1999), the Secretary interpreted the statutory phrase "eligible for medical assistance under a

---

[2] Section 1115 expansion populations are patients who could not be made eligible for Medicaid under a State plan but who are treated as though they were eligible for Medicaid under a demonstration project approved under section 1115(a)(2) of the Social Security Act (42 U.S.C. § 1315).

State plan approved under title XIX [of the Social Security Act]" to mean "eligible for Medicaid." In interpreting 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II), the Secretary reasonably looked to title XIX of the Social Security Act, which is referenced in the Medicare statutory provision at issue.

Title XIX of the Social Security Act is the Medicaid statute. Under the Medicaid statute, States provide Medicaid benefits to individuals meeting applicable Medicaid eligibility criteria, and the federal government makes federal matching payments. For purposes of Medicare DSH, the Medicare statute uses (among other things) Medicaid eligibility as a measure of low-income status. See Cabell Huntington Hosp. Inc., v. Shalala, 101 F.3d 101 F.3d 984, 889 (4th Cir. 1996) ("It is apparent that 'eligible for medical assistance under a State plan' refers to patients who meet the income, resource, and status qualifications specified by a particular state's Medicaid plan . . . ."). As noted above, plaintiffs themselves refer to the calculation at issue in this case as the Medicaid Proxy. Complaint ¶¶ 42, 44. Thus, the Secretary reasonably interpreted "eligible for medical assistance under a State plan approved under title XIX" as referring to individuals who are eligible for Medicaid benefits because they meet the applicable Medicaid eligibility criteria ("eligible for Medicaid").

  C.  **The Secretary Reasonably Determined That the Charity Care Patients At Issue – Who, By Definition, Are Not Eligible for Medicaid – Are Not "Eligible for Medical Assistance Under a State Plan Approved Under Title XIX."**

Plaintiffs concede that the patient days at issue in this case are attributable to patients who are not eligible for Medicaid. Pls.' Reply at 1. Nevertheless, plaintiffs argue that the charity care patients at issue are "eligible for medical assistance under a State plan approved under title XIX." Pls.' Reply at 15; see 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). As stated above, plaintiffs argue that:

(1) the statute refers to the State plan approved under title XIX; (2) the State plan approved under title XIX is a physical document (Pls.' Reply at 17); (3) HCAP is mentioned in the State plan[3]; and (4) applying plaintiffs' interpretation of the term "medical assistance," the patients at issue are receiving medical assistance "under" the State plan.

      The Secretary submits that plaintiffs' theory is contorted at best, but even if plaintiffs' interpretation were a plausible construction of the statute, it is not the only permissible construction. The Secretary's policy of looking to Medicaid eligibility is at least as reasonable as plaintiffs' suggestion of looking at the isolated words of a physical document to see whether a category of patient days can arguably be pigeonholed into the statute by applying alternate interpretations of "medical assistance under a State plan approved under title XIX." Moreover, plaintiffs' theory ignores the basic structure and purpose of title XIX of the Social Security Act (the Medicaid statute), under which States provide medical assistance in the form of Medicaid benefits to individuals who meet the eligibility criteria for Medicaid benefits, and the federal government makes federal matching payments; under plaintiffs' theory, the statute unambiguously requires the Secretary to count patient days of patients who are not eligible for Medicaid benefits.

      Plaintiffs assert that the Secretary has "penned solely for the purposes of this litigation" the suggestion that "individuals who do not meet the applicable eligibility requirements [of the Medicaid statute] . . . are not eligible for medical assistance [under the State plan]." Pls.' reply at 18. This assertion is puzzling at best. The applicable regulations state explicitly that the

---

[3] Plaintiffs offer as evidence a section of the Ohio State plan dealing with the Medicaid DSH payment to hospitals. They offer no evidence (because they cannot) that the patients at issue are included in the eligibility section of the Ohio State plan.

numerator of the Medicaid fraction of the Medicare DSH calculations includes patient days of patient days who are eligible for Medicaid. See, e.g., 42 C.F.R. § 412.106(b)(4) (1999). An individual is eligible for Medicaid if he or she meets Medicaid eligibility requirements; conversely, if an individual does not meet Medicaid eligibility requirements, then he or she is not eligible for Medicaid (and is not "eligible for medical assistance under a State plan approved under title XIX").

Plaintiffs also assert that the Secretary is now making a "post-hoc" argument that patients who benefit from the HCAP provision are not eligible under the State plan. Pls.' Reply at 18. Furthermore, they appear to argue that the Medicaid statute does not in fact set limitations on who can be made eligible for "medical assistance" and go on to assert that such limitations would be irrelevant anyway, because the Secretary has approved Ohio's State plan thereby making these patients eligible for medical assistance. There is absolutely no support for plaintiffs' arguments, either in the statute or logically. First, "medical assistance" is a defined term under title XIX, see, 42 U.S.C. § 1396d(a), and § 1396(d)(a) sets forth 13 categories of individuals who States may choose to make eligible for "medical assistance" under their State plans. Contrary to the plaintiffs' argument, if an individual does not fall within one of these categories, the care provided to that individual is not "medical assistance" pursuant to title XIX. Id. Other than through specific waiver authority that is not relevant here, neither the Secretary nor a state is free to expand upon this enumerated list of optional categories of individuals, as plaintiffs suggest.[4]

---

[4] Indeed, another flaw in plaintiffs' argument is the fact that state plans specifically explain which populations are "eligible" for medical assistance in a section of the state plan that is separate from the payment provisions of the state plan. It is important to note that, in this case, plaintiffs have only cited to the payment provisions of Ohio State plan. These provisions are not generally intended to convey those populations that state is intending to make eligible for medical assistance.

For this same reason, the second part of plaintiffs' argument -- that the Secretary somehow magically converted HCAP individuals into patients eligible for "medical assistance" when he approved the Ohio State plan -- is also plainly wrong. Looking at the provisions of the Ohio State Plan which plaintiffs offer, it appears that HCAP sets forth only three requirements: 1) that the patient not be eligible for Medicaid; 2) that the patient be at or below the federal poverty line; and 3) that the patient be an Ohio resident. According to the plaintiffs, all individuals who fit into these categories would be eligible for "medical assistance" under Ohio State plan, even if they clearly fall outside one of the 13 enumerated optional categories set forth in section 1396a(d) or were otherwise expressly excluded from eligibility by some other provision of the statute. For example, 42 U.S.C. § 1396b(v) prohibits payment to any state for "medical assistance furnished to an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law." Id. According to plaintiffs, an unlawful alien resident of the state of Ohio, below the poverty line, would be eligible for "medical assistance" by virtue of the approval of Ohio's state plan despite this clear prohibition in title XIX. Indeed, there are potentially numerous references in the payment provisions of numerous state plans to individuals who the Secretary would not, and could not, approve as eligible for "medical assistance." [5]

---

[5] This argument is particularly troubling, because if the Court were to hold that the patients at issue were eligible for medical assistance under their respective State plans, the Secretary would reevaluate whether those plans complied with the various provisions of Title XIX that restrict who can be made eligible under a State plan, the services that can be regarded as medical assistance, or provide substantive rights to those patients that are. See e.g., 42 U.S.C. §§ 1396a(a)(10); 1396d(a)(i-xiii) and 1903(v)(restricting categories of eligible individuals and services for certain groups); 42 U.S.C. §§ 1396a(a)(7), (8), (23), (26), (34), and (43) (beneficiary protections).

As the Secretary explained in his opening brief (Def's MSJ) at 8, HCAP is the State of Ohio's version of the required <u>Medicaid</u> DSH payment. In setting payment rates for covered services, a State plan must taken into account (in a manner consistent with section 1923 of the Social Security Act, 42 U.S.C. § 1396r-4) the situation of hospitals which serve a disproportionate number of low-income patients with special needs. 42 U.S.C. § 1396a(a)(13)(A). Section 1396r-4 offers States great flexibility in how they set rates to take into account the needs of hospitals that serve a disproportionate share of low income patients. Ohio, in its State plan, has chosen to identify hospitals that offer free care to patients that meet certain criteria (but are not eligible for Medicaid) as qualifying for the required Medicaid DSH payment. But the patients who receive charity care pursuant to HCAP do not meet the eligibility criteria for Medicaid benefits under the State plan. They are therefore not "eligible for medical assistance under the State plan approved under title XIX" (under the Secretary's reasonable interpretation). The statute does not compel the Court to adopt plaintiffs' contorted interpretation of the statute.

     **D.**    **The Secretary's Interpretation of the Medicare Statute is Entitled to Deference.**

Plaintiffs argue erroneously that the Secretary's interpretation of "eligible for medical assistance under a State plan approved under title XIX" is not entitled to deference. Pls.' Reply at 15. In so doing, plaintiffs misstate the standard of review that the Supreme Court articulated in <u>Chevron USA, Inc. v. Natural Resources Defense Council, Inc.</u>, 467 US. 837 (1984). Specifically, Plaintiffs argue that "[t]he Secretary's interpretation is not entitled to deference because Congress did not expressly delegate authority to the Secretary to elucidate the DSH calculation." Pls.' reply at 15. Plaintiffs appear to be paraphrasing <u>Chevron</u> at 843-44. "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority

to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. Plaintiffs, however, ignore Chevron's next sentences: "Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Id. at 844. A careful reading of Chevron reveals that there had been no explicit delegation to the agency to define the statutory term at issue in that case.

In the present case, Plaintiffs are simply mistaken that the Secretary has no authority to define "eligible for medical assistance under a State plan approved under title XIX." Plaintiffs acknowledge that the term "medical assistance" is "not defined by the Medicare statute." Pls.' Reply at 9. Moreover, Congress has delegated authority to the Secretary to "to make rules and regulations . . . which are necessary or appropriate" to carry out the provisions of the Medicare statute. 42 U.S.C.§ 1395ii; 42 U.S.A. § 405(a).

The delegation of rulemaking authority to implement the Medicare Act, in turn, illustrates why plaintiffs' reliance on Gonzales v. Oregon, 126 S. Ct. 904 (2006) is misplaced. Despite elsewhere correctly stating that Chevron provides the appropriate standard of review, Pls.' Reply at 8, Plaintiffs nevertheless cite Gonzales in support of their argument that the Secretary's interpretation should only be given "power to persuade" deference. See Pls.' Reply at 15; Skidmore v. Swift & Co., 323 U.S. 134, 140 (1994). Gonzales supports no such argument. In Gonzales, the Attorney General had issued an interpretive rule holding that physician assisted suicide was not a "legitimate medical purpose." Gonzales, 126 S. Ct. at 913. The Court ruled that the States, not the Attorney General, had the authority to define what was or was not a

legitimate medical purpose.  Id. at 925 ("For all these reasons, we conclude the CSA's prescription requirement does not authorize the Attorney General to bar dispensing controlled substances for assisted suicide in the face of a state medical regime permitting such conduct."). Gonzales is simply inapposite here, where it is undisputed that the Secretary is charged with administering the Medicare program and has legislative rulemaking authority to prescribe rules necessary and appropriate to carry out that administration.

Furthermore, every United States Court of Appeals to address the meaning of the DSH provision has found Chevron, rather than Skidmore, deference applies.  See e.g. Cabell Huntington, 101 F.3d at 986 ; Jewish Hospital Inc. v. Sec'y of Health & Human Servs., 19 F.3d 270, 273 (6th Cir. 1994); Legacy Emanuel Hosp. & Health Ctr. v. Shalala, 97 F.3d 1261, 1264 (9th Cir. 1996); Portland Adventist Medical Center v. Thompson, 399 F.3d 1091, 1095 (9th Cir. 2005).  Plaintiffs confuse the first step of the Chevron analysis ("whether the statute is clear") with whether Chevron applies at all.  The United States Court of Appeals for the District of Columbia Circuit already rejected the similar argument which plaintiffs made in their opening brief, that the Secretary's interpretation of the DSH fraction was not entitled to Chevron deference because of an alleged "hostility" to the DSH payment.  See  North Broward Hosp. Dist. v. Shalala, 172 F.3d 90, 94 (D.C. Cir. 1999).

### III. COURTS HAVE PREVIOUSLY INTERPRETED THE STATUTORY PHRASE "ELIGIBLE FOR MEDICAL ASSISTANCE UNDER A STATE PLAN APPROVED UNDER TITLE XIX" AS MEANING ELIGIBLE FOR MEDICAID.

In the government's opening brief, the Secretary noted that several federal courts of appeals have adopted the position that "eligible for medical assistance under a State plan approved under title XIX" mean eligible for Medicaid.  Def's MSJ at 2.  Plaintiffs seek to

distinguish the authorities cited by the Secretary by arguing that those cases (which plaintiffs initially argued were relevant) dealt only with the meaning of the word "eligible" as it is used in the statute, while this case turns on the meaning of the words "medical assistance."  Pls.' Reply at 20.  In reality, those cases, like this one, turned on the meaning of the statutory phrase "eligible for medical assistance under a State plan approved under title XIX."  The older cases dealt with the Secretary's position that the Medicare statute did not require the counting of patient days of patients if they were not actually entitled to have the Medicaid program make a payment on their behalf.[6]  As plaintiffs point out, this position of the Secretary was rejected by all of the United States Courts of Appeals to address the question.  See Cabell Huntington; Jewish Hospital Inc. v. Sec'y of Health & Human Servs., 19 F.3d 270 (6th Cir. 1994); Legacy Emanuel; Deaconess Health Serv. Corp. v. Shalala, 83 F.3d 1041 (1996).

Plaintiffs neglect to explain however, that the courts rejected the Secretary's position because they found that Congress intended that the Medicaid proxy count all patients that meet the eligibility criteria for Medicaid, regardless of whether the days were actually paid.  Cabell Huntington, 101 F.3d at 889 ("It is apparent that 'eligible for medical assistance under a State plan' refers to patients who meet the income, resource, and status qualifications specified by a particular state's Medicaid plan . . . ."); id. at 990 ("Section 1396d defines 'medical assistance' to include twenty-five medical services.  If Congress had wanted 'medical assistance' to take on a completely different meaning in the context of this Medicaid proxy provision of the DSH calculation, Congress could easily have so indicated.)"; Legacy Emanuel, 97 F.3d at 1264 ("[T]he word 'eligible' refers to whether a patient is capable of receiving . . . Medicaid."); id. at

---

[6] Most State Medicaid plans pay for only a limited number of days of inpatient hospital care in a given period.  See Cabell Huntington, 101 F.3d at 986-87.

1265 ("We believe the language of the Medicare reimbursement provision is clear: the Medicaid proxy includes all patient days for which a person was eligible for Medicaid benefits, whether or not Medicaid actually paid for those days of service."). Plaintiffs' assertion that the courts did

not address the meaning of the words "medical assistance" is simply not true. Cabell Huntington, 101 F.3d at 990; Legacy Emanuel, 97 F.3d at 1266.

## CONCLUSION

For the foregoing reasons, the Secretary's exclusion of the patient days at issue in this case reflects a reasonable interpretation of the Medicare statute and should be upheld under the deferential Chevron standard. Accordingly, the defendant respectfully requests that the Court grant defendant's motion for summary judgment and dismiss plaintiffs' complaint with prejudice.[7]

                Respectfully submitted,

                /s/
                KENNETH L. WAINSTEIN
                United States Attorney
                D.C. Bar No. 451058

                /s/
                PETER S. SMITH
                Assistant United States Attorney
                D.C. Bar No. 465131
                Civil Division
                555 4th Street, N.W.
                Washington, D.C. 20530
                (202) 307-0372/FAX: (202) 514-8780

                DAVID HOSKINS
                U.S. Department of Health and Human Services
                Office of the General Counsel
                Centers for Medicare & Medicaid Services Division
                330 Independence Ave., S.W., Room 5309
                Washington, D.C. 20201

---

[7] In the event the Court grants plaintiffs' motion for summary judgment and denies Defendant's motion for summary judgment, the proper course of action would be for the Court to remand the matter to the agency. Plaintiffs' request for relief, Plaintiffs' MSJ at 16, is inappropriate.

OF COUNSEL:

PAULA M. STANNARD
Acting General Counsel

KATHLEEN H. MCGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General Counsel
for Litigation

United States Department of Health
and Human Services