**PRRB-DEC, MED-ARD ¶81,620, Washington State Medicare DSH Group II v. BlueCross BlueShield Association, 2007-D5, November 22, 2006 -- Medicare: Reversal of intermediary's DSH adjustments (submitted to CCH Online Jan 3, 2007)**

© 2007, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

**Washington State Medicare DSH Group II v. BlueCross BlueShield Association, 2007-D5, November 22, 2006 -- Medicare: Reversal of intermediary's DSH adjustments (submitted to CCH Online Jan 3, 2007)**

Reversal of intermediary's DSH adjustments

*ISSUE*:

Whether all the patient days related to patients that were eligible for medical assistance under an approved state Medicaid plan for such days were included in the Medicaid ratio of the Medicare disproportionate share hospital (DSH) payment calculation.

*MEDICARE STATUTORY AND REGULATORY BACKGROUND*:

This is a dispute over the proper amount of Medicare reimbursement due a provider of medical services.

The Medicare program provides health insurance to aged and disabled persons. 42 U.S.C. §§1395-1395cc. The Secretary of the Department of Health and Human Services (Secretary) is authorized to promulgate regulations prescribing the health care services covered by the program and the methods of determining payments for those services. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (DHHS) charged with the program's administration. CMS has entered into contracts with insurance companies known as fiscal intermediaries to maintain the program's payment and audit functions. Intermediaries determine payment amounts due providers of health care services (e.g., hospitals, skilled nursing facilities, and home health agencies) under Medicare law and interpretative guidelines issued by CMS.

At the close of its fiscal year, each provider submits a cost report to its intermediary showing the costs it incurred during the period and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider, and notifies the Provider in a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's determination may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

The operating costs of inpatient hospital services are reimbursed by Medicare primarily through the Prospective Payment System (PPS). The PPS statute contains a number of provisions that adjust reimbursement based on hospital-specific factors. See 42 U.S.C. 1395ww(d)(5). This case involves the hospital-specific disproportionate share adjustment. The "disproportionate share," or "DSH" adjustment, requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. §1395ww(d)(5)(F)(i)(1). Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the hospital's "disproportionate patient percentage." See 42 U.S.C. §1395ww(d)(5)(F)(v). The "disproportionate patient percentage" is the sum of two fractions, the "Medicare and Medicaid fractions," expressed as a percentage for a hospital's cost reporting period. 42 U.S.C. §1395ww(d)(5)(F)(vi). The Medicare fraction's numerator is the number of hospital patient days for patients entitled to both Medicare Part A and Supplemental Security Income, excluding patients receiving State supplementation only, and the denominator is the number of patient days for patients entitled to Medicare Part A. Id. The Medicaid fraction's numerator is the number of hospital patient days for patients who were eligible for medical assistance under a

State plan approved under Title XIX for such period but not eligible for benefits under Medicare Part A, and the denominator is the total number of the hospital's patient days for such period. Id.; see also 42 C.F.R. §412.106(b)(4). The Medicaid fraction is frequently referred to as the Medicaid Proxy and is the only fraction at issue in this case.

*STATEMENT OF THE CASE AND PROCEDURAL HISTORY:*

This case involves 18 acute care hospitals (Providers) in the State of Washington that received payments under Medicare Part A for services to Medicare beneficiaries during the cost reporting periods from 1994 through 2000. All of the Providers were participants in the Washington State Medicaid program, and all except one received a DSH adjustment in addition to their PPS reimbursement for services rendered to Medicare beneficiaries during the years at issue.

The Medicaid proxy is commonly documented by data obtained from the state Medicaid agency. During the years under appeal, the State of Washington used an electronic verification system to assist providers and the fiscal intermediary in verifying the number of Title XIX eligible patient days to be used in the Medicare DSH payment calculations. The electronic verification system was programmed to exclude patient days associated with the Medically Indigent (MI) and General Assistance Unemployable (GAU) programs; therefore, the reports provided to the Intermediary for purposes of updating the Medicaid proxy did not include MI and GAU days. Noridian Administrative Services, (Intermediary), in turn, did not include the patient days associated with the MI and GAU programs in determining the amount of the Providers' DSH payments.

At issue in this case is whether patient days attributable to the MI and GAU components of the State of Washington Medicaid State Plan should have been recognized in the Medicaid fraction of the DSH calculation for the Providers.

The Providers appealed the adjustments to the Board and met the jurisdictional requirements of 42 C.F.R §§405.1835- 405.1841. The Providers were represented by Teresa A. Sherman of Paukert & Sherman, PLLC and Robert E. Wanerman of Epstein Becker & Green, P.C. The Intermediary was represented by Bernard M. Talbert, Esquire, of Blue Cross Blue Shield Association.

*PARTIES' CONTENTIONS*:

The parties have entered into two sets of stipulations regarding the facts in this case [1]. As stipulated by the parties in part, the following provisions are relevant to Washington State's MI and GAU Programs:

● The Limited Casualty Program - Medically Indigent (MI) originated in Washington State legislation to provide temporary medical assistance, including inpatient hospital services, to persons meeting low income eligibility criteria who have an emergency medical condition. Prior to December 1, 1991, the MI Program was entirely funded by the State of Washington. Effective December 1, 1991, the Medically Indigent Disproportionate Share Hospital (MIDSH) Program was added to Washington State's Medicaid Plan approved under Title XIX pursuant to State Plan Amendment TN 91-30. State Plan Amendment TN 91-30 was approved by the regional HCFA office on November 30, 1992. Exhibit P-22 is a copy of this State Plan Amendment and the provisions related to the MIDSH Program were not significantly changed by subsequent amendments to the State Plan for the cost reporting periods at issue in this Appeal.

● The General Assistance - Unemployable (GAU) Program also originated in Washington State legislation to provide cash grants and medical assistance to persons meeting low income eligibility criteria who are physically and/or mentally incapacitated and unemployable for more than 90 days (but had not qualified for

Social Security disability benefits). Prior to October 1, 1992, the GAU Program was entirely funded by the State of Washington. Effective October 1, 1992, the General Assistance-Unemployable Disproportionate Share Hospital (GAUDSH) Program was added to the Washington State Medicaid Plan approved under Title XIX pursuant to State Plan Amendment TN 92-25. State Plan Amendment TN 92-25 was approved by the regional HCFA office on May 26, 1993. Exhibit P-11 is a copy of this State Plan Amendment. Subsequent Amendments to the Washington State Title XIX Plan did not impact the GAUDSH Program for the cost reporting periods at issue in this Appeal.

- Individuals in the MI and GAU Programs are certified by the Department of Social and Health Services in the State of Washington for their eligibility for medical assistance under these Programs. The income and resource eligibility criteria for the MI Program are essentially the same as the income and resource eligibility requirements for the Medically Needy Program. The income and resource requirements for eligibility for GAU clients are substantially the same as the income and resource requirements for Categorically Needy clients. Exhibit P-14 includes Washington State Statutes and information made available by the State regarding eligibility criteria. Exhibit P-21 is an accurate summary of the income and resource limits for eligibility under the Categorically Needy, Medically Needy, GAU and MI Programs in the State of Washington as of January 1, 2005. The income and resource limitations for eligibility under these Programs has not changed significantly from the cost reporting periods covered by this Appeal to this criteria as of January 1, 2005.

- State Plan Amendments approved by CMS (formerly HCFA) are part of the approved State Plan under Title XIX.

- For the period of 1994 through 2000, the Washington State Department of Social and Health Services included Medically Indigent (MI) and General Assistance Unemployment (GAU) inpatient days in the numerator of the "Medicaid inpatient utilization rate" (MIPUR) as referenced at Section 1923(b)(2) of the Act, for purposes of determining whether or not to deem a hospital as a disproportionate share hospital.

- The MIPUR formula changed in 2005 to exclude MI and GAU days (Intermediary Exhibit I-11).

The Providers argue that the language of the Medicare DSH statute is clear and unambiguous. Under the statute, the Medicaid fraction or proxy of the DSH calculation includes all of the hospitals "patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under Title XIX of this chapter, but who were not entitled to [Medicare Part A benefits]." 42 U.S.C. §1395ww(d)(5)(F)(vi)(II). Because MIDSH and GAUDSH programs are part of the Washington State Medicaid Plan approved under Title XIX that provides Federal Financial Participation (FFP) for medical services provided to this defined group of low-income patients, the MIDSH and GAUDSH days are required to be included in the Medicaid proxy for the Medicare DSH calculation. The Providers also note that CMS' approval of Washington's State Plan Amendments, incorporating the MIDSH and GAUDSH programs into Washington's Medicaid State Plan, is a determination that is binding on the State of Washington, the Department of Health and Human Services and the Intermediary, as a CMS contractor. As a result, the Intermediary does not have the authority to override the decisions of CMS and exclude these patient days that are incorporated in and are a part of the State Plan under Title XIX.

The Intermediary asserts that statutory construction allows only Medicaid eligible related days in the Medicaid proxy of the Medicaid DSH calculation. It is the Intermediary's position that while the enabling DSH statute (1886 (d)(5)(F)(vi)(II) of the SSA) and its implementing Medicare regulation (42 C.F.R. §412.106(b)(4)) use different words, they refer to exactly the same category of days.

1886(d)(5)(F)(vi)(II): the fraction (expressed as a percentage), the numerator of which is the number of hospital's patient days for such period which consist of patients who (for such days) *were eligible for medical assistance under a State plan approved under title XIX of this chapter*, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of hospital's patient days for

such period. (emphasis added)

42 C.F.R. 412.106(b)(4): Second computation. The fiscal intermediary determines, for the same cost reporting period used for the first computation, the number of the hospital's patient days of service for which patients were *eligible for Medicaid* but not entitled to Medicare Part A, and divides that number by the total number of patient days in the same period. [2] (emphasis added)

It is the Intermediary's position that the statutory term *eligible for medical assistance under a State plan approved under Title XIX* is a long hand description of *eligible for Medicaid* as used in the regulation, and that the terms are interchangeable in the context of this appeal.

The Intermediary argues that the MI and GAU patients are not eligible for programs that are listed in the Medicaid statute and were, therefore, properly excluded from the Medicaid proxy. The Intermediary asserts that the MI and GAU programs are state funded programs that benefit individuals who do not qualify for benefits under a traditional Medicaid program. Therefore, the individuals covered by the MI and GAU programs are not covered by medical assistance as described in 42 U.S.C. §1901. The Intermediary has identified material on the State of Washington's medical assistance website, [3] from the depositions of Mr. Roger Gantz [4] and Ms. Susan Lucas, [5] as well as testimony from Mr. Gantz [6] that it believes supports its contention that the GAU and MI programs are not covered under Title XIX traditional Medicaid programs but are State-only programs. The Intermediary, therefore, concludes that the days related to the MI and GAU programs should not be included in the Medicaid proxy as they are not "true" Medicaid days. The Intermediary asserts that this distinction is critical to the issue under dispute and argues that the programs must be covered under section 1901 of the Social Security Act to be included in the Medicaid proxy.

*FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION*:

After considering the Medicare law and program instructions, the evidence presented and the parties' contentions, the Board finds and concludes as follows:

It is undisputed that 42 U.S.C. §1395ww(d)(5)(F)(vi)(II) governs the issues in this case. Under the Medicare statute, the Medicaid proxy of the DSH calculation includes all "patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under Title XIX of this chapter, but who were not entitled to [Medicare Part A benefits]." The parties stipulated that the MIDSH and GAUDSH programs were included in the Washington Medicaid State Plan approved under title XIX as of November 30, 1992 for the MIDSH program and May 26, 1993 for the GAUDSH program. It is also undisputed that the MI and GAU programs did not receive federal financial participation on a claim-by-claim basis, but rather received federal financial participation only if the hospital qualified for and received Medicaid DSH. If the hospital did not qualify for Medicaid DSH, claims relating to the MI and GAU programs were paid with state-only funds.

The Intermediary asserts that the Medicare statute, when read in conjunction with its implementing regulation, limits "medical assistance" to Medicaid. The Intermediary argues that "eligible for medical assistance under a State Plan approved under Title XIX" is the statute's "longhand description of Medicaid" as used in the regulation, and the terms "Medical assistance" and "Medicaid" are interchangeable in the context of this appeal. Because the State of Washington identifies the Categorically Needy and Medically Needy programs as the only two programs covered under Title XIX, the Intermediary reasons that only those two programs should be entitled to inclusion in the Medicare DSH Medicaid proxy. In addition, the Intermediary argues that the MI and GAU days are reported by the State of Washington in literature and in testimony as state-only Medicaid days, which, by definition, should not be included in the Medicare DSH Medicaid proxy. The Board does not concur.

The Board finds that the purpose of the DSH statute is to compensate hospitals for the additional costs

associated with treating low-income patients. The plain language of the statute requires all days relating to patients eligible for medical assistance under a State Plan approved under Title XIX to be included in the Medicaid proxy. The Board finds no overriding rational to limit the term "eligible for medical assistance under a State Plan approved under Title XIX" to the Intermediary's Medicaid-eligible definition. Although the patients in the MI and GAU programs do not qualify for Medicaid under Section 1901 of the Social Security Act, CMS participates in payment for these claims through the Medicaid DSH payment and recognizes that MI and GAU program patients should qualify for medical assistance under a state approved plan as these programs are included in the state approved plan. Accordingly, the Intermediary's adjustments improperly excluded MI and GAU patient days from the Providers' Medicare DSH calculations.

*DECISION AND ORDER*:

The Intermediary's adjustments improperly excluded MI and GAU patient days from the Providers' DSH calculations. The Intermediary's adjustments are reversed.

*BOARD MEMBERS PARTICIPATING*:

Suzanne Cochran, Esquire

Gary B. Blodgett, D.D.S.

Elaine Crews Powell, C.P.A.

Anjali Mulchandani-West

Yvette C. Hayes

*FOR THE BOARD*:

NOV 22 2006

```
Attachment A:
                            Schedule of Providers in Group (Schedule A)
                    Group Name WA State Medicare DSH Group II Page No. 1 o
               ------------------------------------------------------
----
           Representative Delbert Nord, Quality Reimbursement Services Date Prep
           -----------------------------------------------------------------
------------------
                                         Case No. 02-1833G
                                         ----------------
     Issue: Were all of the patient days related to patients that were oligible fo
            approved State Medicaid plan on such day included in the Medicaid rati
            Share payment calculation? (42 CFR 412.106 and Section 1886(d)(5)(F)
```

(vi)(II)

| Provid? No. | FYE | Intermediary | NPR | A Date of Final Determ | B Date of Hearing Request | C No. of Days | Audit | D Adj. No. |
|---|---|---|---|---|---|---|---|---|
| 1. 50-0008 -1019 | 6/30/1994 05/20/03 | Premera Blue Cross | R | 09/14/01 | 03/12/02 | 179 | 2 | 546, |
| 2. 50-0008 -1777 | 6/30/1995 05/20/03 | Premera Blue Cross | R | 11/06/01 | 05/02/02 | 177 | 1 | 532, |
| 3. 50-0008 -1488M | 6/30/1997 05/20/03 | Premera Blue Cross | | 09/19/00 | 02/28/01 | 162 | 45 | 515, |
| 4. 50-0008 -1489M | 6/30/1998 05/20/03 | Premera Blue Cross | | 09/27/00 | 02/28/01 | 154 | 52 | 565, |
| 5. 50-0008 -1021 | 6/30/1999 05/20/03 | Premera Blue Cross | | 09/14/01 | 03/12/02 | 179 | 50 | 543, |
| 6. 50-0008 -0687 | 6/30/2000 05/20/03 | Premera Blue Cross | | 08/30/02 | 02/25/03 | 179 | 35 | 551, |
| 7. 50-0009 -0891 | 12/31/1994 03/15/03 | Premera Blue Cross | R2 | 09/18/02 | 03/15/03 | 178 | 1,2,3 | 100, |
| 8. 50-0012 | 12/31/1994 | Premera Blue Cross | R | 07/12/02 | 09/24/02 | 74 | 1 | 287, |
| 9. 50-0012 -2059 | 12/31/1995 12/16/02 | Premera Blue Cross | | 09/30/98 | 03/25/99 | 176 | 6 | 751, |
| 10. 50-0014 -0892 | 12/31/1999 03/14/03 | Premera Blue Cross | | 09/27/02 | 03/14/03 | 168 | 25 | 289, |

```
                    ?         ?
              ?           ?
              ?
11. 50-
0019 ? 12/31/1999 ? Premera Blue Cross    09/17/02 03/17/03  181    Self Dis  845,
-0893     03/17/03
              ?           ?
              ?           ?
12. 50-
0024 ? 12/31/1999 ? Premera Blue Cross    09/26/02 03/14/03  169        52   219,
-0894     03/14/03
              ?           ?
              ?           ?
13. 50-
0026 ? 12/31/1999 ? Premera Blue Cross    08/19/02 12/30/02  133      1,64   246,
-0380     12/30/02
              ?           ?
              ?           ?
14. 50-
0036 ? 10/31/1995 ? Premera Blue Cross R  06/27/02 08/19/02   53         1   542,
-2060     08/19/02
              ?           ?
              ?           ?
              ?
15. 50-
0036 ? 10/31/1996 ? Premera Blue Cross R  07/18/02 08/19/02   32         1   697,
-2061     08/19/02
              ?           ?
              ?           ?
              ?
16. 50-
0036 ? 10/31/1997 ? Premera Blue Cross R  09/11/02 10/04/02   23       1,3   725,
              ?           ?
              ?           ?
              ?
17. 50-
0036 ? 10/31/1999 ? Premera Blue Cross    09/10/02 10/04/02   24       1,5   734,
              ?           ?
              ?           ?
              ?
18. 50-
0039 ? 4/30/1996  ? Premera Blue Cross R  03/11/02 07/09/02  120         1   439,
-1909     07/09/02
              ?           ?
              ?           ?
19. 50-
0039 ? 4/30/1997  ? Premera Blue Cross R  03/11/02 07/09/02  120         2   391,
-1910     07/09/02
              ?           ?
              ?           ?
20. 50-
0039 ? 4/30/2000  ? Premera Blue Cross    07/15/02 12/19/02  157         8   467,
-0328     12/19/02
              ?           ?
              ?           ?
21. 50-
0050 ? 9/30/1999  ? Medicare Northwest    06/07/02 06/25/02   18        40   540,
-1893     06/25/02
              ?           ?
              ?           ?
```

```
                     ?
22. 50-
0050 ? 9/30/2000  ? Medicare Northwest    12/09/02 01/09/03   31         2,32   519,
-0732     01/09/03
          ?                  ?
          ?                  ?
          ?
23. 50-
0054 ? 12/31/1994 ? Premera Blue Cross    09/29/97 03/20/98   172       43,58   954,
-1759     10/31/02
          ?                  ?
          ?                  ?
          ?
```

Attachment A:

Schedule of Providers in Group (Schedule A)
Group Name WA State Medicare DSH Group II Page No. 1 o
------------------------------------------------------
----
Representative Delbert Nord, Quality Reimbursement Services Date Prep
----------------------------------------------------------------------
------------------
Case No. 02-1833G
----------------

Issue: Were all of the patient days related to patients that were oligible fo
approved State Medicaid plan on such day included in the Medicaid rati
Share payment calculation? (42 CFR 412.106 and Section 1886(d)(5)(F)
(vi)(II)

```
                                        A        B         C       D

   Provid? ?    FYE    ?  Intermediary  NP Date of Date of No. of Audit Adj.
     No.   ?           ?                R  Final   Hearing  Days   No.
                       ?                   Determ  Request
------------------------------------------------------------------------------
----------------------------------
24. 50-
0054 ? 12/31/1997 ? Premera Blue Cross    09/28/01 03/20/02   173        3,33 2,031,
-1496     11/18/02
          ?                  ?
          ?                  ?
          ?
25. 50-
0054 ? 12/31/1999 ? Premera Blue Cross    09/27/02 03/21/03   175   12,122,137 1,435,
-0953     03/21/03
          ?                  ?
          ?                  ?
          ?
26. 50-
0058 ? 12/31/1996 ? Premera Blue Cross R  09/17/02 10/02/02   15             1  103,
-0056     10/02/02
          ?                  ?
          ?                  ?
27. 50-
0058 ? 12/31/1997 ? Premera Blue Cross R  09/17/02 10/02/02   15             1  134,
-0057     10/02/02
          ?                  ?
```

```
                    ?              ?
28. 50-
0058 ? 12/31/1999 ? Premera Blue Cross    09/30/02 11/26/02   57         1,2    123,
-0314     11/26/02
              ?              ?
              ?              ?
29. 50-
0064 ? 6/30/1994  ? Premera Blue Cross    09/25/96 01/30/97  127          35  1,593,
-0945     06/25/02
                             ?
                             ?
30. 50-
0064 ? 6/30/1995  ? Premera Blue Cross    09/30/97 02/12/98  135          58  2,121,
-1075     06/25/02
                             ?
                             ?
31. 50-
0064 ? 6/30/1999  ? Premera Blue Cross    09/25/01 03/12/02  168           5  3,094,
-1219     06/25/02
                             ?
                             ?
32. 50-
0064 ? 6/30/2000  ? Premera Blue Cross    09/25/02 03/13/03  169     Self Dis  2,205,
-0828     03/13/03
                             ?
                             ?
33. 50-
0077 ? 12/31/1999 ? Premera Blue Cross    09/20/02 10/28/02   38       12,81    278,
-0118     10/28/02
              ?              ?
              ?              ?
34. 50-
0079 ? 9/30/1995  ? Premera Blue Cross R  10/29/01 01/25/02   88           2    455,
-0728     10/02/02
              ?              ?
              ?              ?
35. 50-
0079 ? 9/30/1996  ? Premera Blue Cross R  05/02/02 09/19/02  140           1    262,
-2157     09/19/02
              ?              ?
              ?              ?
36. 50-
0079 ? 9/30/1997  ? Premera Blue Cross R  11/17/00 04/25/01  159           3    246,
-2945     10/02/02
              ?              ?
              ?              ?
37. 50-
0079 ? 9/30/1998  ? Premera Blue Cross    04/18/01 09/27/01  161          24    187,
-3573     10/02/02
              ?              ?
              ?              ?
38. 50-
0079 ? 9/30/1999  ? Premera Blue Cross    06/18/02 09/03/02   77           3    142,
-2158     09/03/02
              ?              ?
              ?              ?
39. 50-
0108 ? 6/30/1995  ? Premera Blue Cross R  12/04/01 05/22/02  169           1  1,113,
-1866     05/22/02
              ?              ?
```

```
                  ?             ?
             &
             M
             C
40. 50-
0108 ? 6/30/2000  ? Premera Blue Cross    09/27/02 01/06/03 101    10,132    673,
-0409    01/06/03
                  ?             ?
                  ?             ?
             &
             M
             C
41. 50-
0129 ? 12/31/1995 ? Premera Blue Cross R  01/22/02 06/26/02 155         1    333,
-1887    06/26/02
                  ?             ?
                  ?             ?
42. 50-
0129 ? 12/31/1996 ? Premera Blue Cross R  01/03/02 06/26/02 174         2    405,
-1888    06/26/02
                  ?             ?
                  ?             ?
43. 50-
0129 ? 12/31/1999 ? Premera Blue Cross    09/23/02 03/19/03 177      4,34    600,
-1031    03/19/03
                  ?             ?
                  ?             ?
44. 50-
0141 ? 6/30/1995  ? Premera Blue Cross R  12/14/01 05/22/02 159         1    139,
-1864    05/22/02
                  ?             ?
                  ?             ?
                                ?
45. 50-
0141 ? 6/30/1996  ? Premera Blue Cross R  03/11/02 05/22/02  72         3    147,
-1865    05/22/02
                  ?             ?
                  ?             ?
                                ?
46. 50-
0141 ? 6/30/2000  ? Premera Blue Cross    09/18/02 01/06/03 110      6,31    165,
-0410    01/06/03
                  ?             ?
                  ?             ?
                                ?
```

PRRBNews CostNews HospitalNews

[1] See stipulations numbered 1-12 dated November 14, 2005 and stipulations numbered 1 & 2 dated January 12, 2006.

[2] C.F.R. §412.106(b) changed on two occasions during the FY's covered in this appeal. Revisions were dated July 31, 1998 and Jan. 20. 2000. The statute did not change during that time.

[3] See Exhibit I-2.

[4] See Exhibit I-14, pages 31-32.

[5] See Exhibit I-13, pages 11 and 13.

[6] See Transcript, pages 106 and 116-117.

© 2007, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company