UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ADENA REGIONAL MEDICAL CENTER, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 05-2422 (LFO) ) |
| MICHAEL A. LEAVITT, Secretary, United States Department of Health and Human Services, | ) ) ) ) ) |
| Defendant. | ) ) ) |

MEMORANDUM

This case involves a challenge to the Secretary of Health and Human Services' interpretation of the statutory formula for providing reimbursements under Medicare to hospitals that serve a disproportionately high share of low-income patients. For reasons explained below, the Plaintiffs' Motion for Summary Judgment is granted, and the Defendant's Cross-Motion for Summary Judgment is denied.

**I.     Background and Procedural History**

    A.     The Statutory Framework

        i.     The Medicare Scheme and the "Disproportionate Share Adjustment"

The Medicare program provides health insurance to elderly and disabled persons. *See* 42 U.S.C. § 1395 *et seq*. The Secretary is authorized to promulgate regulations prescribing the health care services covered by the program and the methods of determining payments for those services. The operating costs of inpatient hospital services are reimbursed by Medicare primarily

through a prospective payment system. *See* 42 U.S.C. § 1395ww(d). This system contains a number of statutory provisions that adjust reimbursement based on hospital-specific factors. *Id.*

In 1985, Congress enacted legislation directing the Secretary to include an adjustment to provide additional Medicare payments to hospitals that serve a "significantly disproportionate number of low-income patients." It was called the "disproportionate share hospital ('DSH') adjustment" (the "Adjustment"). Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Pub. L. No. 99-272, § 9105 (1986); 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). Congress also established a specific formula for calculating the Adjustment; whether a hospital qualifies for the Adjustment, and how large an adjustment it receives, depends on the hospital's "disproportionate patient percentage." 42 U.S.C. § 1395ww(d)(5)(F)(v). The "disproportionate patient percentage" is the sum of two fractions, the Medicare fraction and Medicaid fraction for a hospital's cost reporting period. 42 U.S.C. § 1395ww(d)(5)(F)(vi). The first fraction, the Medicare fraction, is based on the number of Medicare patients who qualify for Supplemental Security Income. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The second fraction, the Medicaid fraction, is based on the number of non-Medicare low-income patients served by the hospital.

The proper calculation of the numerator in the Medicaid fraction (the "Numerator") is the dispute in this case. The text of the statute, as amended in 2005, is as follows:

> (II) the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter [Medicaid], but who were not entitled to benefits under part A of this subchapter [Medicare-Part A], and the denominator of which is the total number of the hospital's patient days for such period.
>
> In determining . . . the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan

approved under subchapter XIX of this chapter, the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under subchapter XI of this chapter.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

   ii.  The Medicaid Scheme (Title XIX)

Title XIX of the Social Security Act (Medicaid) authorizes the use of federal funds to help states offset the cost of providing medical assistance to eligible low-income individuals. *See* 42 U.S.C. § 1396 *et seq*. To receive these funds, a state must submit a "state plan" for approval by the Secretary, and it must administer the plan according to Medicaid requirements. 42 U.S.C. § 1396d(a). Only expenditures made under an approved Medicaid state plan become eligible for matching federal payments. 42 U.S.C. § 1396d(a)-(b).

 B. The Undisputed Facts

Plaintiffs are 25 hospitals that participate in Ohio's Hospital Care Assurance Program ("HCAP"), a part of Ohio's state health plan ("State Plan"). Ohio's State Plan has been approved by the Secretary under Title XIX. Pls.' Statement of Material Facts ¶1; Def.'s Statement of Material Facts ¶3. HCAP provides coverage for medical assistance provided to low-income Ohio residents otherwise ineligible for traditional Medicaid. Def.'s Statement of Material Facts ¶6(a); Pls.' Response ¶¶ 2,6. The state of Ohio receives some federal matching funds for HCAP days under the Medicaid statute. Pls.' Response ¶¶ 3. Medicare funds are administered and paid to providers through fiscal intermediaries. The fiscal intermediary for the Plaintiff Hospitals has not allowed the Hospitals to include HCAP days in calculating their Medicare DSH adjustment. Pls. Statement of Material Facts ¶1. The Ohio plan at issue in this case is a traditional state plan

that includes provisions for reimbursing hospitals for certain services provided to low-income patients not eligible for traditional Medicaid.

    C.    Procedural History

The Hospitals timely filed appeals of the fiscal intermediary's determination to the Provider Reimbursement Review Board (the "Board"). *See* 42 U.S.C. § 1395oo(a). On December 7, 2005, the Board determined that it lacked authority to decide the appeal because it involved "a question of law" and granted Expedited Judicial Review. *See* 42 U.S.C. § 1395oo(f)(1).

The Hospitals subsequently brought this action in federal court. On February 1, 2006, they moved for summary judgment [dkt. 7-1]. On March 29, 2006, the Secretary filed a cross-motion for summary judgment [dkt. 16]. On December 22, 2006, the Court's Calendar Committee transferred to me the cross-motions for summary judgment for decision. *See* Local Civil Rule 40.6(a).

The central issue is whether or not the Secretary's interpretation of the phrase "eligible for medical assistance under a State plan approved under subchapter XIX of this chapter [the Medicaid statute]" is consistent with the plain language of the statute.

## II.    Discussion

    A.    Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). This case presents a pure question of law.

In reviewing the Secretary's interpretation, a court looks to the statutory language and legislative history to determine if Congress has directly spoken to the precise question at issue. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). When "the statutory scheme is coherent and consistent" and "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," no deference to the agency is required. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (*quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). The court's role is to ensure that Congressional intent is given effect. If, however, the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. It is not sufficient for a plaintiff to offer an alternative, equally permissible construction. *Id.* at 843 n.11.

**B. Analysis**

Plaintiffs argue that the phrase "eligible for medical assistance under a State plan approved under subchapter XIX of this chapter" is unambiguous. It is undisputed that HCAP is part of Ohio's State Plan and that the State Plan has been approved by the Secretary under Title XIX. Thus, Plaintiffs argue, *by definition*, the Numerator should include HCAP patients.

The Secretary argues that he has reasonably interpreted the same phrase to mean "eligible for Medicaid;" that the phrase in the statute is "long-hand"; and that the terms are interchangeable. He seems to assert that the statute is ambiguous, or at least not "clearly unambiguous." Thus, the Secretary asserts that his reasonable interpretation is entitled to deference; the statute does not require him to include HCAP patients in the Numerator. He

5

further argues that exclusion of HCAP patient days is proper because those individuals are clearly not eligible for Medicaid.

The Secretary's argument is unpersuasive. The statutory formula unambiguously directs the Secretary to include all "patients who ... were eligible for medical assistance under a State plan approved under [Title] XIX" in the Numerator. §1395ww(d)(5)(F)(vi)(II). "[T]he statutory scheme is coherent and consistent" and "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Barnhart,* 534 U.S. at 450. Congress said what it meant; if Congress had meant to restrict the Numerator to Medicaid-eligible patients, it could have explicitly done so. The phrase "eligible for *medical assistance under a state plan approved under Title XIX"* is not "long-hand" for "eligible for Medicaid." It is undisputed that HCAP is a "state plan approved under Title XIX." Accordingly, the Secretary's exclusion of HCAP patients is inconsistent with the plain language of the statute and cannot be upheld.

The application of the Numerator to patients covered by plans like the one at issue in the present case is an issue of first impression in federal courts. However, it is not the first time that federal courts have addressed the Secretary's interpretation of the Numerator. From 1986 through 1997, the Secretary construed the first portion of this Numerator to include only those patients who were *both* eligible for Medicaid payments under the relevant state Medicaid plan and for whom the hospital *actually received* such payments from the state. Providers challenged this interpretation, arguing that the statute unambiguously required the Secretary to include all days for which a patient was *eligible* for Medicaid, not just the days for which Medicaid was paid. Every circuit court that subsequently considered the Secretary's interpretation uniformly concluded that the word "eligible" should be given its plain meaning; the Numerator

unambiguously includes all patient days for which a patient was *eligible* for Medicaid regardless of whether a state Medicaid program actually paid the hospital for services provided to the patient. *See Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984, 988 (4th Cir. 1996); *Legacy Emanuel Hosp. and Health Ctr v. Shalala*, 97 F.3d 1261, 1266 (9th Cir. 1996); *Deaconess Health Servs. Corp. v. Shalala*, 83 F.3d 1041, 1041 (8th Cir. 1996); *Jewish Hosp., Inc. v. Secretary of Health and Human Servs.*, 19 F.3d 270, 276 (6th Cir. 1994). Similarly, the statute should be given its plain meaning here. The Secretary points out that these courts often substituted "Medicaid" for "medical assistance" in paraphrasing the statute. He argues that this proves that the terms are interchangeable, but those slips of language are not even dicta. Nor do such statements suggest that the statutory language is ambiguous; the part of the phrase at issue here was not before those courts.

Finally, while the plain language of the statute speaks for itself, it is noteworthy that Congress' purpose in enacting the Adjustment was based on its determination that care for low-income patients consumes a disproportionately large share of hospitals' resources, resulting in higher Medicare costs. *See* H.R. Rep. No. 99-241, at 16 (1985), *reprinted in* 1986 U.S.C.C.A.N. 579, 594. The Adjustment was clearly intended to measure "the entire low-income population actually served by the hospitals." *Portland Adventist Med. Ctr. v. Thompson*, 399 F.3d 1091, 1099 (9th Cir. 2005).[1]

---

[1] This case addressed the Secretary's exclusion of patient days covered by a state "demonstration project authorized under title IX." In 2005, Congress amended the statute to give the Secretary discretion to include or exclude such patients. *See* Deficit Reduction Omnibus Act of 2005, Pub. L. No. 109-171, § 5002. Both Parties agree, and I conclude, that the 2005 amendment did not alter the application of the statute to state plans approved under Title XIX.

### III. Conclusion

For the foregoing reasons, in an accompanying order Plaintiffs' motion for summary judgment is granted, and Defendant's cross-motion for summary judgment is denied.