# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 18, 2008          Decided May 30, 2008

No. 07-5273

ADENA REGIONAL MEDICAL CENTER,
APPELLEES

v.

MICHAEL O. LEAVITT, SECRETARY, DEPARTMENT OF HEALTH
& HUMAN SERVICES,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 05cv02422)

*August E. Flentje*, Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Anthony J. Steinmeyer*, Attorney, U.S. Department of Justice. *R. Craig Lawrence*, Assistant U.S. Attorney, and *Megan L. Rose*, Attorney, U.S. Attorney's Office, entered appearances.

*Murray J. Klein* argued the cause and filed the brief for appellees. *Jacqueline E. Bennett* entered an appearance.

Before: SENTELLE, *Chief Judge*, and GINSBURG and BROWN, *Circuit Judges*.

[FILED stamp: UNITED STATES COURT OF APPEALS FOR DISTRICT OF COLUMBIA CIRCUIT, MAY 30 2008, CLERK]

8

III. Conclusion

In sum, we conclude the HCAP provision requiring the Hospitals to care for indigent patients is not part of the Ohio "State plan approved under [Medicaid]" and the indigent patients covered by the HCAP provision are not "eligible for medical assistance" within the meaning of the Medicare statute, 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).* Therefore, the judgment of the district court is

*Reversed.*

RECEIVED
AUG 15 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

---

* The Hospitals' other arguments are sufficiently lacking in merit as not to warrant consideration in a published opinion.

6

**B.   HCAP Patients Are Not Eligible for "Medical Assistance"**

As we noted at the outset, in order to prevail the Hospitals must demonstrate that patients who obtain charity care under the HCAP are "eligible for medical assistance under a State plan approved under [Medicare]" within the meaning of that phrase in the Medicare statute, 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). As explained below, we conclude that the term "medical assistance," which is not defined in Title XVIII of the Act, has the same meaning in the Medicare DSH provision of Title XVIII as it has in the federal Medicaid statute, Title XIX of the Act; as a result, the Hospitals' case would fail even if HCAP patients did obtain care under the Ohio Medicaid plan for, as the Government points out, the federal Medicaid statute defines "medical assistance" as "payment of part or all of the cost" of medical "care and services" for a defined set of individuals, § 1396d(a), whereas the HCAP does not entail any payment.

First, we note the Medicare DSH provision in Title XVIII of the Act expressly refers to the Medicaid statute (as Title XIX of the Act), § 1395ww(d)(5)(F)(vi)(II), and the same phrase -- "medical assistance under a State plan approved under the

---

and ... will decrease if they're treating less [sic] HCAP patients." The suggestion reflects a misunderstanding of the rationale for DSH adjustments. Hospitals in Ohio receive more DSH funds under the Medicaid plan the more HCAP patients they treat not because those patients receive care under the Medicaid plan, but because Ohio law treats such patients as a proxy for low-income patients, just as the Medicare provision treats Medicaid patients as a proxy for low-income patients. Thus, the Ohio Medicaid plan provides a hospital more money for Medicaid patients the more HCAP patients it treats, just as the federal Medicare statute provides a hospital more money for Medicare patients the more Medicaid patients it treats, *Cabell Huntington Hosp., Inc.*, 101 F.3d at 985.

7

[Medicaid]" -- appears throughout the Act.* As the Supreme Court has instructed on countless occasions, we are to presume "identical words used in different parts of the same act are intended to have the same meaning." *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932); *see also Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (applying canon where "cross-references" indicate two administrative programs within Social Security Act "operate together").

Second, and perhaps more probative, the Medicaid DSH provision permits the states to adjust DSH payments "under a methodology that" considers either "patients eligible for medical assistance under a State plan approved under [Medicaid] or ... low-income patients," 42 U.S.C. § 1396r-4(c)(3)(B), such as those served under the HCAP. The Medicaid and Medicare DSH provisions serve the same purpose -- to adjust payments to hospitals that serve a disproportionate share of poor patients -- and in doing so each refers to patients "eligible for medical assistance under a State plan approved under" the Medicaid title of the Act. *Id.*; § 1395ww(d)(5)(F)(vi)(II). It stands to reason the Congress intended the quoted phrase to have the same meaning in the two provisions.

We thus conclude HCAP patients do not obtain, and are not eligible for, "medical assistance" within the meaning of the Medicare DSH provision, wherefore the Hospitals' case must fail. As the Fourth Circuit has noted, "[i]f Congress had wanted 'medical assistance' to take on a completely different meaning" in the Medicare DSH provision in Title XVIII than it has in the Medicaid statute, Title XIX, then the "Congress could easily have so indicated." *Cabell Huntington Hosp., Inc.*, 101 F.3d at 990.

---

*   *See, e.g.*, 42 U.S.C. §§ 1320a-7b(a)(6), 1382h(b)(3), 1396a(a)(10)(E), 1396n(i)(1).

## A. HCAP Provision Is Not Part of Medicaid Approved Plan

Contrary to the Hospitals' argument, § 5112.17(B) is clearly not part of a "State plan approved under [Medicaid]" because an approved state Medicaid plan -- as the Hospitals acknowledge in their brief -- must pay providers for the care of eligible patients. *See* 42 U.S.C. §§ 1396a-1396b; *see also* § 1396d(a), (b). Section 5112.17(B) of the HCAP, however, requires the Hospitals to care for indigent patients without payment. *See also* OHIO ADMIN. CODE 5101:3-2-07.17. By its terms, moreover, § 5112.17(B) requires hospitals to care for patients only if they "are not recipients of the medical assistance program," that is, Medicaid. *See* OHIO REV. CODE § 5112.01 (defining "medical assistance program" as "the program of medical assistance established under section 5111.01 of the Revised Code and Title XIX [Medicaid] of the 'Social Security Act'"); *see also* § 5112.17(C) (hospital may "requir[e] an individual to apply for eligibility under the medical assistance program [Medicaid] before ... process[ing] an application under" § 5112.17). It is clear, therefore, that under Ohio law HCAP patients do not receive care pursuant to the Medicaid plan and, consequently, that HCAP patients are not eligible for care "under a State plan approved under subchapter XIX [Medicaid]" within the meaning of the Medicare statute, 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

The Hospitals point out that the Secretary approved certain modifications to the Ohio regulation implementing § 5112.17(B) as an amendment to Ohio's Medicaid plan. True enough; *see* OHIO ADMIN. CODE 5101:3-2-07.17, approved by the Secretary April 6, 2001. Accordingly, the Hospitals maintain, the regulation must be part of the Ohio Medicaid plan: Why else would the Secretary have approved the regulation as an amendment to that plan?

4

The answer is not far to seek. The federal Medicaid statute contains its own DSH provision, which requires each state "specifically [to] define[]" eligibility for DSH adjustments in the state Medicaid plan and to "provide[] ... for an appropriate increase in the rate or amount of payment" eligible hospitals receive. *See* 42 U.S.C. § 1396r-4(a)(1).* Ohio acted pursuant to that provision to determine DSH adjustments in its Medicaid program by reference to a hospital's compliance with the requirement, set out in Rule 5101:3-2-07.17, that a hospital provide charity care under the HCAP. *See, e.g.,* OHIO ADMIN. CODE 5101:3-2-09(K)(5)(c) (hospitals are not eligible for Medicaid DSH adjustments if they do not provide charity care under the HCAP). Thus the regulation, which determines the eligibility of patients for such charity care, indirectly also determines the Hospitals' eligibility for and amount of DSH adjustments under the Ohio Medicaid plan. Federal law obliged Ohio to submit the regulation to the Secretary for approval because the mechanism for providing a DSH adjustment under Medicaid is part of Ohio's Medicaid plan, and the Secretary must approve that plan, *see* 42 U.S.C. § 1396r-4(a) (state plan does not satisfy requirement of § 1396a(a)(13)(A) unless state has submitted to Secretary methodology for making DSH adjustments); § 1396a(b) ("The Secretary shall approve any plan which fulfills the conditions specified in" § 1396a(a); *see also* § 1396r-4(a)(3) (governing approval by Secretary of amendments made under § 1396r-4). The Secretary's approval of Rule 5101:3-2-07.17 does not suggest in any way that HCAP patients receive care pursuant to the Ohio Medicaid plan.**

---

*   The Medicare DSH provision, in contrast, does not defer to the states on those questions. *See* § 1395ww(d)(5)(F).

**  At oral argument the hospitals suggested § 5112.17(B) of the Ohio Code is part of the Medicaid plan because "their [Medicaid DSH] payments will increase if they're treating more HCAP patients

5

2

Opinion for the Court filed by *Circuit Judge* GINSBURG.*

GINSBURG, *Circuit Judge*: The Ohio Hospital Care Assurance Program (HCAP) ensures that indigent Ohioans who "are not recipients of the medical assistance program," *i.e.*, the Ohio Medicaid plan, nonetheless receive "basic, medically necessary hospital-level services" at no charge. OHIO REV. CODE § 5112.17(B); *see* Title XIX [Medicaid] of the Social Security Act, 42 U.S.C. § 1396 *et seq*. The state of Ohio does not reimburse hospitals for the cost of providing such mandatory charity care.

Seeking indirectly to cover some of their HCAP expenses, the 25 plaintiff-appellee hospitals took the position that the Secretary of Health and Human Services should include beneficiaries of the HCAP in calculating the monies the Hospitals are due under the Medicare program for the elderly and the disabled. *See* Title XVIII [Medicare] of the Act, 42 U.S.C. § 1395 *et seq*. The Secretary disagreed but the Hospitals successfully challenged his decision in the district court. 524 F. Supp. 2d 1 (2007). We now reverse that judgment.

I. Background

Under the Medicare statute, the Secretary generally pays hospitals a sum for each covered inpatient service without regard to the hospital's actual cost. *See* 42 U.S.C. § 1395ww(d). In 1983, however, the Congress determined any hospital that serves a disproportionately large percentage of low-income patients -- known as a disproportionate share hospital (DSH) -- should be reimbursed at a higher rate, apparently because the

---

* *Circuit Judge* BROWN concurs in the opinion of the Court except as to Part II.A.

3

more low-income patients a hospital treats, the more it costs on average to care for Medicare patients. *See Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984, 985 (4th Cir. 1996) ("low-income Medicare patients have generally poorer health and are costlier to treat than high-income Medicare patients"). The Congress further determined the number of low-income patients each hospital treats should be measured indirectly by reference to the number of its patients "eligible for medical assistance under a State plan approved under [Title] XIX" of the Social Act, *i.e.*, Medicaid, "but ... not entitled to benefits under [Medicare]," 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). Put simply, the more a hospital treats patients who are "eligible for medical assistance under a State plan approved under [Medicaid]," the more money it receives for each patient covered by Medicare.

II. Analysis

The question before us is whether HCAP patients are "eligible for medical assistance under a State plan approved under [Medicaid]." If so, then the Secretary miscalculated the DSH adjustments the Hospitals should have received under Medicare. We conclude for two reasons that the Secretary was correct, and accordingly was entitled to summary judgment. First, the HCAP provision that requires hospitals to care for indigent patients, § 5112.17(B), is not part of the Ohio "State plan approved under [Medicaid]" and, second, HCAP patients are not "eligible for medical assistance" within the meaning of that term in the Medicare DSH provision. We reach these conclusions based not upon any deference to the Secretary's interpretation but upon our own reading of the Social Security Act. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (if the "Congress has directly spoken to the precise question at issue," then "that is the end of the matter").